[Crim. No. 1440.   Second Appellate District, Division Two.—May 23, 1927.]

THE PEOPLE, Respondent, v. H. A. SHEARER et al., Defendants; R. J. ELLIS, Appellant.

[1] CRIMINAL LAW—CONSPIRACY—OBTAINING MONEY BY FALSE PRETENSES—EVIDENCE—INFERENCES—VERDICT.—In this prosecution of several defendants for obtaining and conspiring to obtain money by false pretenses, it is held that while the evidence in its relation to one of the defendants was in some ways circumstantial, much of it connected him directly with the offenses charged, and that the evidence as a whole reasonably justified the inference of guilty participation on his part sufficient to support the verdict of guilty.

[2] ID.—PLEADING—INFORMATION—FRAUD—FALSE PRETENSES.—In such prosecution, the information, which alleged that defendants knowingly and feloniously represented that they had for sale an interest in a cleaning plant, in which one of them represented as owner had no interest, and that the prosecuting witness paid a sum of money on faith of such representations, which were made for the purpose of inducing him to make such payment, sufficiently averred an intent to defraud, the fraud actually committed, the false pretenses used, and the accomplishment of the fraud by means thereof.

[3] ID.—SUFFICIENCY OF INFORMATION—SECTIONS 950 AND 959, PENAL CODE.—Under sections 950 and 959 of the Penal Code, an information need only state facts in such a manner as to enable a person of common understanding to know what is intended and to enable the court to pronounce judgment of conviction according to the right of the case.

---

2.   False pretenses, how must be charged, notes, 25 Am. St. Rep. 384; 30 Am. St. Rep. 134.   See, also, 11 R. C. L. 859.   Sufficiency of allegations of object of and means of accomplishing conspiracy, note, 21 Ann. Cas. 34.   See, also, 12 Cal. Jur. 451; 5 R. C. L. 1083.

3.   Form and sufficiency of indictment or information, note, 3 Am. St. Rep. 279.   See, also, 14 Cal. Jur. 25; 14 R. C. L. 1083.

[4] Id.—Conspiracy to Obtain Money by False Pretenses—Punishment—Construction of Code.—One convicted of conspiracy to obtain money, in the amount of four hundred dollars, by false pretenses, which is punishable as larceny by section 532 of the Penal Code, and, under section 487, constitutes grand larceny, which, being punishable under section 489 by imprisonment in the state prison for not less than one nor more than ten years, is a felony, became subject to punishment as for grand larceny under the first penal paragraph of section 182 of the Penal Code.

[5] Id.—Section 182, Penal Code—Statutory Construction.—When there is a conviction upon a charge of conspiracy to commit a felony, no other punishment is authorized than that prescribed in the first penal paragraph of section 182 of the Penal Code, the phrase "the other acts prescribed in this section," as used in the second penal paragraph, referring to offenses which are not felonies.

[6] Id.—Punishment—Indeterminate Sentence—Length of Term.—In this prosecution for obtaining and conspiring to obtain money by false pretenses, an indeterminate sentence of imprisonment in state prison on a count charging conspiracy to obtain money in amount of four hundred dollars by false pretenses was as definite and certain as that on another count charging the crime of obtaining money by false pretenses, and was not objectionable as leaving the prison authorities to determine the length of the term, but having been convicted of a felony, defendant was punishable under the first penal paragraph of section 182 of the Penal Code as for grand larceny.

[7] Id.—Pleading—Information—Sufficiency of.—In such prosecution, a count of the information charging conspiracy to obtain money by purporting to carry out a sale of an interest in a cleaning plant, no part of which was owned by the person introduced as the seller, with fraudulent intent to deceive and defraud the prosecuting witness, and alleging that in furtherance of the conspiracy defendants made false representations and cheated him out of his money by such false pretenses, sufficiently charged a criminal conspiracy, although not alleging that the conspirators, as part of the conspiracy, knowingly or falsely, or with intent to defraud, represented that the seller owned an interest in the plant.

[8] Id.—Obtaining Money by False Pretenses—Larceny by Trick and Device—Determining Factor in Distinguishing Between

---

4.  See 5 Cal. Jur. 507.

8.  Distinction between larceny and obtaining property by false pretenses, note, 2 Ann. Cas. 1010. See, also, 8 Cal. Jur. 460; 11 R. C. L. 828.

CRIMES.—The determining factor in distinguishing between the crimes of obtaining money by false pretenses and larceny by trick and device is the intent with which the injured person places his money or property in the hands of the accused; and if the owner intends to part with possession merely, and not to transfer title as well, the crime is larceny, but if he intends to pass title, the offense is that of obtaining money or property by false pretenses.

[9] ID.—PLEADING—EVIDENCE.—In such prosecution, where defendants represented to the prosecuting witness that he was buying a half interest in the cleaning plant, and took his money as payment therefor, having another make affidavit in the purported seller's name that there were no debts, and using it as the basis for the immediate consummation of the purported sale, they were correctly charged with obtaining and a conspiracy to obtain money by false pretenses rather than larceny by trick and device and conspiracy to commit larceny by trick and device.

[10] ID.—EVIDENCE—SIMILAR TRANSACTIONS—SYSTEM.—In such prosecution, evidence of similar transactions with other parties, who had dealings with defendant, was admissible to show criminal system of operation.

[11] ID. — COMMON DESIGN — INSTRUCTIONS.—In such prosecution, an instruction that common design may be shown by the steady pursuit of the conspirators of the same object, whether they act separately or together, or by the same or different means, provided all lead to the same unlawful result, was not erroneous as giving the jury to understand that defendant, even though innocent and acting separately and using different means, must be convicted of conspiracy, if his acts led to the unlawful result of defrauding the prosecuting witness, where the instructions as a whole and other instructions made it clear that under the charge of conspiracy there must be proof beyond a reasonable doubt of guilty participation in a criminal partnership by each defendant before he could be found guilty.

---

(1) 12 C. J., p. 638, n. 80; 25 C. J., p. 650, n. 42.   (2) 25 C. J., p. 618, n. 47.   (3) 31 C. J., p. 660, n. 92, p. 662, n. 6.   (4) 12 C. J., p. 644, n. 68.   (7) 12 C. J., p. 621, n. 25.   (8) 25 C. J., p. 605, n. 24. (10) 16 C. J., p. 598, n. 80.   (11) 12 C. J., p. 641, n. 7.

10. Other offenses as favorable in false pretenses, notes, 10 Ann. Cas. 906; Ann. Cas. 1917C, 464; 62 L. R. A. 222, 240, 323; 43 L. R. A. (N. S.) 667. See, also, 8 Cal. Jur. 69; 12 Cal. Jur. 472; 8 R. C. L. 203; 11 R. C. L. 867. Evidence of other offenses, when admissible, note, 105 Am. St. Rep. 976. See, also, 8 R. C. L. 202.

APPEAL from a judgment of the Superior Court of Los Angeles County and from an order denying a new trial. Charles S. Burnell, Judge. Affirmed.

The facts are stated in the opinion of the court.

Paul W. Schenck for Appellant.

U. S. Webb, Attorney-General, and H. H. Linney, Deputy Attorney-General, for Respondent.

JOHNSON, J., *pro tem.* — The defendants Shearer, Thomas, and Ellis were jointly accused in an information charging them with certain offenses in four counts, all relating to the same transaction; the first charging grand larceny in stealing $400 on October 6, 1925, from Albert Loiselle; the second charging conspiracy to commit grand larceny; the third charging the defendant with obtaining money by false pretenses in connection with the sale to Loiselle of a half interest in an automobile steam cleaning plant; the fourth with conspiracy to obtain money by false pretenses in the same matter. The defendant Thomas was not tried with the other two defendants, but was a witness for the state; and the case against him was dismissed. By the verdict of the jury the defendants Shearer and Ellis were found guilty on the third and fourth counts of the information, the first two counts having been dismissed at the close of the case for the prosecution. Shearer having been placed on probation, the appeal is by Ellis alone, who appeals from the judgment against him and from the order denying his motion for a new trial. He received an indeterminate sentence of imprisonment in the state prison on both the third and fourth counts, the two sentences running concurrently.

[1] The appellant admits that the evidence showed a conspiracy in which Shearer, Thomas, and an individual called Jeffries took part; but it is contended that there is no evidence showing Ellis himself to have been guilty on either count. Appellant makes also certain technical objections to the information and to one of the court's instructions, which will be considered later. In a study of the evidence careful scrutiny has been made, pursuant to the

request of appellant's counsel, of the typewritten record of the testimony, comprising 550 pages. While the evidence in its relation to appellant is in some ways circumstantial, yet much of it connects him directly with the offenses charged; and we are of the opinion that the evidence as a whole reasonably justified the inference of guilty participation on the part of appellant, and that the verdict against him is therefore not without adequate support.

The salient facts of the case are as follows: Ellis was a licensed broker who for about four years had been carrying on business in Los Angeles as an investment broker engaged in negotiating sales of business interests. He had a number of salesmen working under him, each of whom, as he brought a transaction to completion, received from Ellis a share of the commission or profit realized. Shearer was one of Ellis' salesmen who gave attention particularly to transactions relating to "automobile washing and greasing stands"; and it was in connection with such a transaction that the offenses here under review were committed. The complaining witness, Albert Loiselle, had been a seaman in the United States navy, but was not in the service at the time of his dealings with Ellis' office, though he was again in the navy at the time of the trial. Loiselle was led to visit Ellis' office by a newspaper advertisement stating that a partner was wanted to buy a half interest in an automobile steam cleaning plant. On that visit Loiselle met Shearer, who introduced him to a man called Jeffries, whom Shearer brought in from the outside, and who was represented to be the owner of a steam cleaning business and in search of a partner. The three then drove together to a plant situated at No. 4300 South San Pedro Street, which really belonged to a man named Levy, who owned all the equipment and had a ten-year lease of the land. After a brief examination, Shearer, Loiselle, and Jeffries returned to Ellis' office, whereupon Jeffries, without stopping, walked out at the rear entrance, leaving Shearer and Loiselle together. Shearer then introduced Loiselle to Ellis, stating that Loiselle was going to buy a half interest in the cleaning plant, the price of which had been named to Loiselle as $400; and, as Loiselle tells the story, Ellis' first question to him was as to how much money he had for a deposit. Loiselle was not prepared at the moment to pay more than $5, and this amount

was paid over to Ellis, either directly by Loiselle himself or by Shearer after having previously received it from Loiselle, the evidence being in conflict on this point. The deposit was delivered to Ellis about 11 o'clock in the morning; and early in the afternoon Loiselle returned with $400, as he had promised Ellis. He then paid this amount directly to Ellis, who at the same time repaid to him the deposit of $5 previously received, and promised to hurry the completion of the necessary papers. In the course of the next couple of hours Ellis himself prepared, and had Loiselle sign, a deposit agreement, offering to buy on the terms therein named and stating that a deposit of $5 had been made on account of the purchase price of $400; also articles of copartnership between Jeffries and Loiselle, specifying that each of them should be entitled to an undivided half interest in the automobile cleaning business located at 4300 South San Pedro Street. At the time when Loiselle signed there was no signature by or in the name of Jeffries. Ellis made ready also a form of affidavit, in the name of Jeffries, according to the language of which Jeffries was to make oath that the business was free of debt and that he so deposed to avoid waiting seven days after recording notice of intended sale, and in order to obtain immediate payment of the purchase price. To this form was appended a consent to the immediate payment of the money, which Ellis had Loiselle sign, though there had not as yet been affixed to the affidavit the signature of any affiant or of any notary. In addition, Ellis caused Loiselle to acknowledge receipt of one of Ellis' forms reciting that Loiselle was acting on his own initiative and judgment, and not on any representations made by Ellis or his agents. This all took place on October 6, 1925.

After paying Ellis the $400 and signing the papers which Ellis presented to him, and without any papers requiring the signature of Jeffries having yet been signed, Loiselle was directed to come to Ellis' office the next morning, October 7th, and go with Shearer to the plant. At about 6 o'clock in the afternoon of October 6th Thomas, who was an employee in the Los Angeles fire department, known to Shearer and, according to certain testimony, to Ellis also, presented himself at Ellis' office, posing as Jeffries, and there found both Ellis and Shearer. Ellis asked Thomas, "What is your

share?'' to which Shearer answered, ''$100.'' Thereupon Ellis, who insists that he believed Thomas to be really Jeffries, told Thomas that he would first have to sign some papers, and that one, the Jeffries affidavit, would have to be signed before a notary. Accordingly, Thomas signed, in the name of Jeffries, the partnership agreement, as well as the other papers already prepared by Ellis which called for the signature of Jeffries, and likewise, in the name of Jeffries, Thomas made oath to the effect that the business was free from debt. Thomas testified that he had been sent to Ellis' office by Jeffries to get the sum of $100 for Jeffries, and that Jeffries had told him to sign his name to any papers necessary. When Thomas had completed the signatures he received from Ellis $100 and was accompanied by Shearer to where Jeffries was waiting, delivered the money to Jeffries and left him and Shearer together. The rest of Loiselle's money remained in Ellis' hands, except perhaps $150, which was delivered by Ellis to Shearer, but the final disposition of which was not shown. During the day, and apparently after Loiselle had paid his $400 to Ellis, Shearer had procured from Levy, the owner of the cleaning plant, and not otherwise involved in the transaction, a lease of the plant for two years, running to Jeffries and Loiselle, at a rental of $75 per month, the lease specifying that the first and last month's rent was to be paid on execution of the lease. This lease had also been signed by Loiselle at Ellis' instance before any other signatures were affixed. Levy insisted on the payment of the $150 before he would sign the lease, and Shearer therefore gave Levy a check drawn by Shearer on an account in his wife's name. The check was dishonored, however, on presentation at the bank next day.

Loiselle received none of the papers which had been signed on October 6th; but on the following morning he was taken by Shearer to the plant. Jeffries was there doing some cleaning, but stepped aside at Shearer's request to talk with Shearer, and a few minutes afterward left and was never again seen by Loiselle. That same afternoon Levy, having learned of the dishonor of Shearer's check, ordered Loiselle out of the plant, declaring that the lease was at an end because of failure to comply with the condition of payment of the first and last month's rent. Loiselle immediately went to Ellis' office, and on that visit, as well as on subsequent

occasions, had interviews with Ellis and Shearer in which he demanded the return of his money, but without avail; Loiselle saying that on one occasion Ellis said to him, "You lost your money automatically, you might as well beat it." Finally the matter was brought to the attention of the district attorney, and resulted in the prosecution of this proceeding, in which Ellis and Shearer were adjudged guilty, both of conspiring to obtain, and of obtaining, money from Loiselle by false pretenses.

Believing from the evidence as a whole that the jury were justified in rendering a verdict against Ellis as well as against Shearer on both counts, we will proceed to consider the objections made to the information.

The third count of the information alleges that Shearer, Thomas, and Ellis, with the intent to defraud Loiselle, knowingly and feloniously pretended and represented to Loiselle that they had·for sale, and could sell, a half interest in the designated cleaning plant, and that Jeffries was the owner of a half interest therein, which he would sell to Loiselle for $400. It it further alleged that "while" said defendants were seeking to induce Loiselle to pay $400 as the purchase price of said half interest, Jeffries did not own any interest in said plant, but that it was the sole property of H. Levy. The information continues with certain averments customary in such cases, and among other things states that Loiselle was deceived by the representations, and paid his money on the faith of them, and in consideration of the grant then and there to him of an undivided half interest in the plant; and that the defendants made their false representations for the purpose of inducing Loiselle to deliver to them said $400 in return for the pretended half interest.

It is urged that the only time to which the false representations are relegated was "while" the defendants were seeking to induce payment by Loiselle, and that the information does not negative the representation that defendants did have a half interest for sale, and that Jeffries would sell a half interest; and, further, that there is no allegation that either Jeffries or Levy did not in fact do so. In addition it is urged, on the one hand, that since it is alleged that Loiselle made his payment "in return and in consideration for a grant then and there to him of a one-half inter-

est," it must be presumed that he received such grant; yet, on the other hand, appellant says there is no direct allegation that Loiselle actually purchased the half interest, and hence there is a failure of any causal connection between the alleged false pretenses and the payment of the money. [2] A reading of the third count discloses, however, to the ordinary mind that what defendants were pretending to sell was a half interest belonging to Jeffries, whereas in fact Jeffries had nothing to sell, and Loiselle was thus induced to pay his money to defendants for something that Jeffries did not own and could not, and did not, deliver; and that defendants knew such to be the fact and acted as they did with intent to cheat and defraud Loiselle out of the sum of $400, of which defendants did in fact feloniously deprive him. There is a natural connection between the representations described and the parting with the money; and the information sufficiently sets forth the requisite elements by averring the intent to defraud, the fraud actually committed, the false pretenses used, and the accomplishment of the fraud by means of those pretenses. (*People* v. *Wasservogle,* 77 Cal. 173 [19 Pac. 270].) [3] It is sufficient that an information contains a statement of the facts in such a manner as to enable a person of common understanding to know what is intended, and likewise to enable the court to pronounce judgment of conviction according to the right of the case. (Secs. 950 and 959, Pen. Code.) It cannot be successfully maintained that the information in this instance did not sufficiently apprise the appellant and the court of the offense for which appellant was put to trial, and for which judgment was to be pronounced upon the verdict of guilty.

[4] Appellant likewise engages in a critical analysis of the fourth count, which is in much the same form as the third except that it alleges that the defendants conspired to do, and in furtherance of their conspiracy did, the things there set forth, being the things done according to the averments contained also in the third count. In discussing the fourth count, a large portion of appellant's brief is devoted to a dismemberment of section 182 of the Penal Code. The portions of that section which particularly concern us are subdivision 1, under which the offense designated may consist of a conspiracy to commit any crime, whether a felony

or a misdemeanor, and the first penal paragraph, prescribing the punishment for conspiracy to commit any felony. The conspiracy of which appellant was found guilty was one to obtain money, in the amount of $400, by false pretenses. The crime of obtaining money by false pretenses is subjected to the same punishment as larceny by section 532 of the Penal Code; and under section 487, one taking property exceeding $200 in value is guilty of grand larceny, which, being punishable under section 489 by imprisonment in the state prison for not less than one nor more than ten years, is a felony. It follows, then, that when appellant was found guilty of a conspiracy to commit such a felony as was charged, he became subject to punishment as for grand larceny under the first penal paragraph of section 182. (*Doble* v. *Superior Court*, 197 Cal. 556 [241 Pac. 852].)

[5] It is contended, however, that the sentence under the fourth count left it doubtful whether it was the intention of the court to mete out punishment for a felony or only for a misdemeanor, and that it may not be left to the prison authorities to determine how long appellant's prison term should last. The trial judge might with propriety have specified that the crime of which the appellant was convicted was a felony. At the same time it must be borne in mind that when there is a conviction upon a charge of conspiracy to commit a felony, as in this case, there is no other punishment authorized than that prescribed in the first penal paragraph of section 182, for the reason that "the other acts described in this section," as that phrase is used in the second penal paragraph, must be taken to refer to offenses which are not felonies. [6] In this instance the judgment is just as definite and certain as if appellant had been charged with, and convicted of, a conspiracy to commit grand larceny. If the offense had not been grave enough to constitute a felony, and appellant had been found guilty of a misdemeanor only, he would have been brought within the purview of subdivision 4 of section 182; and the punishment would have been that prescribed by the second penal paragraph, which makes such a misdemeanor punishable by imprisonment not exceeding two years or a fine not exceeding $5,000, or both. But having been convicted of a felony as charged, appellant must bear the punishment fixed by the first penal paragraph,

which is here the same as the punishment for grand larceny. Consequently, the sentence under the fourth count is just as definite and certain as that under the third count, which charged the crime of obtaining money by false pretenses; and the prison authorities are left in no quandary in respect of the sentence imposed under either count.

[7] Pursuing the discussion of the fourth count, appellant's counsel insists that that count does not sufficiently charge a criminal conspiracy, because there is not an allegation that as part of the conspiracy the conspirators knowingly or falsely, or with intent to defraud, made any representation that Jeffries owned a half interest in the cleaning plant; and because, also, there is no sufficient allegation of any overt acts. The count does allege, however, that no part of the plant was owned by Jeffries, and proceeds to state that the conspiracy charged was one to obtain money by purporting to carry out a sale from Jeffries to Loiselle with the fraudulent intent to deceive Loiselle and defraud him of his money. The information then sets forth that in furtherance of the conspiracy the defendants did make their false representations to Loiselle and did cheat him out of his money by such false pretenses. We think that the information in the fourth count, as well as in the third, sufficiently meets the legal requirements, and if put to the test would protect appellant from being subjected to another prosecution for either offense. (*People* v. *Steelik,* 187 Cal. 361, 372 [203 Pac. 78].)

[8] Still another contention advanced on behalf of appellant is that if any crimes were committed they did not relate to obtaining money by false pretenses, but constituted respectively larceny by trick and device and conspiracy to commit larceny by trick and device. In distinguishing between the two classifications the determining factor is the intent with which the injured person places his money or property in the hands of the accused. If the owner intended to part with possession merely, and not to transfer title as well, the crime is larceny; but if title is intended to pass at the time, then the offense is that of obtaining money or property by false pretenses. (*People* v. *Edwards,* 72 Cal. App. 102, 113 [236 Pac. 944].)

[9] It must be remembered in this case that Loiselle was given to understand that he was buying an undivided

half of the plant, then and there; and Ellis purported to
be representing the seller, and took Loiselle's money as pay-
ment for a half interest. Loiselle expected the papers to
be ready for him when he returned on the afternoon of
October 6th with his money. He was minded to sign at
that very moment; and in fact he waited for Ellis to com-
plete the papers, whereupon he affixed his signature at once.
The evidence leaves no doubt that Loiselle was making no
distinction between the title and the possession of the money,
and that when he put the money into Ellis' hands, he re-
garded it as money paid for a purchase thereby effected.
On the other hand, there can likewise be no doubt that
Ellis received the money as payment for a half interest
in a business of which the pretended owner was Jeffries,
whom Ellis was supposed to represent; and instead of fol-
lowing the prescribed procedure by recording a notice of
intended sale and waiting seven days, Ellis had Thomas
make an affidavit in Jeffries' name that there were no debts,
and used that affidavit as a basis for the immediate consum-
mation of the pretended sale. When it came to application
of the money, Ellis, within a few hours after he received
it, parceled out $100 to Thomas posing as Jeffries, and
dealt with the residue pursuant to some private understand-
ing between himself and Shearer. We conclude that the
information correctly defined the offenses with which the
defendants were chargeable.

[10]   In the course of the trial evidence of three other
similar transactions with other parties who had had dealings
with Ellis was received to show a criminal system of opera-
tion; and the admission of such evidence is now specified as
error. In our opinion, however, such evidence related to
transactions sufficiently near in time and similar in char-
acter to be receivable within the rule discussed and applied
in *People* v. *Gray*, 66 Cal. 271, 274, 275 [5 Pac. 240], *People*
v. *Ruef*, 14 Cal. App. 579, 604 [114 Pac. 48, 54], *People* v.
*Arnold*, 17 Cal. App. 68, 74 [118 Pac. 729], and *People* v.
*Cory*, 26 Cal. App. 735, 741 [148 Pac. 532].

[11]   The only criticism directed at any of the instruc-
tions of the court relates to the final sentence in an in-
struction on the subject of conspiracy. Among other things,
the court first told the jury that they must be satisfied
beyond a reasonable doubt of the formation and existence

of a conspiracy, and were to determine from all the facts and circumstances in evidence whether a conspiracy did in fact exist, and whether it was illegal in its inception or became illegal at any subsequent time. The court then proceeded to say: "The purpose of the combination is usually known only to those who enter it, and their guilt can generally be proved only by circumstantial evidence. The common design is the essence of the fact, and this may be shown by the steady pursuit of the alleged conspirators of the same object, whether they act separately or together, or by the same or different means, provided all lead to the same unlawful result." The criticism of this part of the instruction is that it gave the jury to understand that Ellis, even though innocent and acting separately and using different means, must be pronounced guilty nevertheless as an alleged conspirator if his innocent acts led to the unlawful result of defrauding Loiselle. We cannot believe that as the words of the court fell upon the ears of the jury those words received the interpretation now put upon them by the ingenuity of counsel. The instruction from which the quotation is taken, when read as a whole, gives a correct statement of the law; and other instructions to which no exception is taken made it clear to the jury that under the charge of conspiracy there must be proof beyond a reasonable doubt of guilty participation in a criminal partnership on the part of each defendant before he could be found guilty.

The judgment against appellant and the order denying his motion for a new trial are affirmed.

Craig, Acting P. J., and Thompson, J., concurred.

A petition by appellant to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on July 21, 1927.