[Crim. No. 2457.   Third Dist.   Jan. 18, 1954.]

THE PEOPLE, Respondent, v. HENRY WILLIAM
PETRIN, Appellant.

Carlton & Shadwell and Robert A. Haughwout for Appellant.

Edmund G. Brown, Attorney General, and Gail A. Strader, Deputy Attorney General, for Respondent.

PEEK, J.—This is an appeal by defendant from a judgment of conviction of the crime of embezzlement.

By information, defendant was charged with violation of Penal Code, section 506, in that he wilfully and fraudulently appropriated certain money which was entrusted to him and came into his possession and control for the use of one "Homer Bruce, the Anderson Valley News, and the Anderson Chamber of Commerce." Defendant pleaded not guilty to the crime as charged, and waived jury trial. Following the conviction, judgment and sentence were suspended, and the defendant was given probation subject to certain conditions.

The facts show that defendant had been engaged in specialty advertising campaigns, particularly in northern California. In the course of this work he had become acquainted with Mr. Bruce, the publisher of the Anderson Valley News, whom he approached with the idea of preparing a souvenir program for the 27th District Agricultural Fair. Bruce discussed with him what would be necessary to promote such a program and subsequently agreed to do the printing. The defendant then secured the approval of the Anderson Chamber of Commerce as the sponsor thereof, with the agreement that he would pay the chamber a flat fee of $300 for the use of their name as sponsor.

Two salesmen were engaged by defendant to assist in the solicitation of advertisements. They were to be paid on a commission basis for all advertisements sold. The following

form was prepared for use by those who subscribed to advertisements:

No. ———

### 27TH DISTRICT AGRICULTURAL FAIR, SHASTA COUNTY, 1952
#### ADVERTISING CONTRACT—SOUVENIR PROGRAM

Sponsored by the Anderson Chamber of Commerce, Anderson, Calif.

We are happy to reserve space in the Souvenir Program of the Annual 27th District Agricultural Fair, Shasta County, to be held at Anderson, September 4, 5, 6, 7, to occupy ...... page, for which

We agree to Pay the Sum of $......... (This includes the cost of cuts and mats.)

(A special discount of 10% for cash upon signing of order.)

This Agreement cannot be cancelled.

Accepted:                                    Sponsor
_____                                  _____

                                             By
                                             _____

(Make all checks payable to 27th District Fair Souvenir Program, or, to Anderson Chamber of Commerce Souvenir Fair Program.)

Except for two instances all checks made out by advertisers were made payable to the Anderson Chamber of Commerce Souvenir Fair Program, or to the 27th District Agricultural Fair Souvenir Program. A rubber stamp was prepared by defendant which read ''Anderson Chamber of Commerce,'' and directly under those words, ''Souvenir Fair Program.'' Defendant endorsed each check by placing this stamp on the back and by signing his own name thereto. Of the $1,250 collected, the chamber of commerce was paid $165. Sometime during the latter part of August, defendant prepared a complete layout of the program and sent it to Bruce for printing. Bruce, who was unable to print the program within the 10 days or two weeks remaining before the fair opening, requested the chairman of the chamber of commerce to call a special meeting to discuss the problem. At that meeting it was decided that Bruce should have the program printed by a San Francisco printing company. This was done at a cost of $933, all of which the chamber of commerce paid. The program so printed was available at the opening of the fair, and all of the advertisements for which subscriptions had been taken appeared therein.

At the conclusion of the trial, the trial judge filed a memorandum opinion wherein he noted, "I find therefore that Petrin absconded with somewhere between $600 and $1,250 of cash to which he probably had a legal title subject to a trust to use it or so much of it as was needed for printing the programs and for paying the Chamber of Commerce the balance due to it on the contract." The trial court further stated that those who purchased advertising space in the program were not dealing with defendant personally, but were doing so because of the endorsement of the chamber of commerce, and were "receiving him as an agent of the said Chamber." Furthermore said the court, "The advertisers also knew Petrin as having been an agent for the well-known and good-reputed Homer Bruce and the Anderson Valley News in past campaigns. Therefore, although they parted with title to their money, they did so by creating a trust in all money collected by Petrin in favor of the Chamber and Bruce, first, that Bruce would get the printing job and be paid for it, and second, that the Chamber would get $300 *and* that the programs would be properly published and delivered to the fair for circulation."

The crime of embezzlement has been defined in various ways. Penal Code, section 503, defines it as being the "fraudulent appropriation of property by a person to whom it has been entrusted." ▪ 10 California Jurisprudence 241 states that the crime ordinarily ". . . is the breach of trust or confidence reposed in one intrusted with the property of another, it is essential to the commission of the offense that a relation of trust and confidence exist between the owner of the property alleged to have been embezzled and the person alleged to have appropriated it. If the relation is that of creditor and debtor merely, an appropriation by the latter does not constitute embezzlement." ▪ The Supreme Court of this state, in the case of *People* v. *Borchers,* 199 Cal. 52 at page 56 [247 P. 1084], has set forth the elements of the crime as follows: "In order to sustain a conviction upon such a charge it must at least be shown, first, that the accused was the agent or bailee of the prosecuting witness in holding the alleged embezzled property; second, the property must actually belong to the alleged principal, the prosecuting witness; third, it must be lawfully in the possession of the accused at the time of the alleged embezzlement; fourth, the accused must have been guilty of the conversion which the statute denounces; and fifth, there must be shown an intent on the part

of the accused to deprive the prosecuting witness of his property unlawfully." (See, also, *People* v. *Cannon*, 77 Cal.App. 2d 678 at page 689 [176 P.2d 409]; and *People* v. *Hewlett*, 108 Cal.App.2d 358 at page 367 [239 P.2d 150].)

In the present case the respondent in support of the judgment, relies almost entirely upon the form of the contract used, its argument being that the Anderson Chamber of Commerce appears thereon as sponsor, that as a space was left for a signature an agency was thereby created, that therefore the money so collected being the property of the chamber, the defendant was guilty of the crime of embezzlement. No argument is made by respondent in support of the charge contained in the information that defendant also embezzled funds of "Homer Bruce [and] the Anderson Valley News." ▮ While it cannot be denied that the chamber of commerce did agree to act as sponsor of the program, that fact alone did not establish the relationship of principal and agent. As sponsor, the chamber became a surety for the acts of Petrin (see Webster's New Internat. Dict.). Under such circumstances Petrin, as the defaulting party, could not be held to have embezzled funds of the chamber merely because in its capacity as sponsor it made good to the advertisers.

Furthermore, respondent's contention is refuted by the testimony of the chairman of the chamber. He was asked, ". . . that if the Chamber of Commerce would sponsor the program he [Petrin] would pay you three hundred dollars cash, isn't that right? A. That is right. Q. And that you wouldn't be responsible in any manner whatsoever; all that they had to do was use your name as sponsor and pay you three hundred dollars, is that right? A. That is right. Q. You weren't supposed to do any work, any soliciting or anything? A. That is right. Q. He would do all the work, put the program together, take care of the printing, and that would be it; you wouldn't be out a thing and you would get three hundred dollars for that particular service, is that correct? A. That is right. Q. In other words, Mr. Petrin, when he went out soliciting ads, assuming he did, he wasn't working for the Chamber of Commerce, was he?" At this point, following an objection by the prosecution, the court took over the interrogation of the witness and said, "In other words, you didn't consider he was working for the Chamber of Commerce as an employee? A. No, but he was using the Chamber of Commerce's name and, after all, the

responsibility of using the Chamber of Commerce's name is what I was concerned about. THE COURT: Yes. In other words, you were endorsing him to the public, but he was on his own as far as the work was concerned? At least he wasn't working for you? A. He wasn't on his own. As I understood, he was to work through the Valley News, I thought, like most business people thought.'' Mr. Shadwell, defendant's counsel, then asked, ''But he wasn't working for the Chamber of Commerce; he was merely using your sponsoring name, isn't that correct? A. That is right. Q. For which he was going to pay three hundred dollars into your treasury, isn't that right? A. Yes.''

Additionally there was testimony by Mr. Bruce to the effect that he had discussed the program with the defendant and had suggested that he talk with the chamber of commerce as a possible sponsor, and that in the course of the conversation the defendant had told him that he would give the chamber of commerce $300 as consideration for its sponsorship of the program, and that Bruce would get the printing job. Also it should be noted that none of the merchants, 22 in number, who were sold advertisements, and who testified for the prosecution, considered that the money paid by them was in any way to be held in trust so that Bruce might obtain and be paid for the printing of the program, or that defendant was in any way acting as agent for the chamber of commerce.

Examining the facts presented in light of the rule in the Borchers case (199 Cal. 52) we find nothing herein which would bring the acts of the defendant within the rule as therein set forth. Again we repeat, there is no evidence that any advertiser believed he was paying his money for the benefit of Bruce, his newspaper or the chamber of commerce. Likewise, there is no evidence that any merchant knew that either Bruce or the Anderson Valley News was to benefit by doing the printing of the program or that the chamber of commerce had sold the use of its name for $300.

The most that can be said of the evidence is that it showed (1) that defendant personally failed to see that the program was printed, but since the program was ultimately printed and distributed at the fair no damage resulted, (2) that he failed to deliver the copy to Bruce on time, but since that contract was executory and no damage was shown to have been suffered by Bruce, again such act was of no consequence, and (3) that since the chamber assumed the increased cost,

defendant would not be obligated therefor but would be liable to the chamber for the balance of the $300 which he failed to pay for the use of its name as sponsor. The record being barren of any evidence either to establish a trust or to establish an agency, the most that can be said of it is that nothing more than a breach of debtor-creditor relationship has been shown. To hold otherwise would be to conclude that every person who breaches a civil contract wherein the payment of money is involved is guilty of embezzlement.

In summary, the holding of the court in *People* v. *Holder*, 53 Cal.App. 45 at page 48 [199 P. 832], is particularly apropos: "The moneys which it is claimed were embezzled were paid to appellant under his respective contracts with the lot owners. No part of the money thus paid to him was the property of another. It was appellant's own property, and his only. Appellant, therefore, could not justly be found guilty under section 503, which defines embezzlement as the 'fraudulent appropriation of property by a person to whom it has been intrusted.' In no true sense of the words can it be said that that which is absolutely one's own is property that 'has been intrusted' to him. As the crime of embezzlement is ordinarily understood and defined, one cannot be guilty of embezzling his own property."

The judgment is reversed.

Van Dyke, P. J., and Schottky, J., concurred.