[Crim. No. 2961. First Dist., Div. Two. May 24, 1954.]

THE PEOPLE, Respondent, v. HARRY GOULD, Appellant.

Arthur D. Klang for Appellant.

Edmund G. Brown, Attorney General, Clarence A. Linn, Assistant Attorney General, Clayton R. Janssen, Jr., and Raymond A. Momboisse, Deputy Attorneys General, for Respondent.

DOOLING, J.—Appellant was convicted by the court sitting without a jury, a jury trial having been waived, of the crime of grand theft. He appeals from the judgment and order denying his motion for new trial.

It appears that appellant had an option to purchase from one Fred N. Pigeon the gold bearing gravel in a mine known as the Pigeon Mine. He met the complaining witness, one Cholia, an elderly man, in the tailor shop of one Selix. Appellant sold to Cholia a 10 per cent interest in "the net gold production of the Pigeon Mine" for $1250 and gave him a joint venture agreement in writing evidencing this sale which recites: "said option covers the mineral rights only." This was dated December 20, 1949. As to the initial transaction Cholia got just what he paid for.

Subsequently appellant caused to be incorporated in Nevada a corporation, "Dixie-Cal Cooperative Syndicate" with a capital stock of $25,000 divided into 25,000 shares and he gave Cholia a certificate for 2,500 shares of this corporation on February 1, 1950, without further payment by Cholia, which appellant signed as secretary and Cholia, at appellant's suggestion, signed as president. Appellant had no permit from the Corporation Commissioner of California to sell this stock but he was not charged with a violation of the Blue Sky Law.

Cholia gave appellant other sums of money from time to time for which he received promissory notes signed by appellant. He testified that appellant represented that these sums were needed to buy machinery for the mine and to work the mine. Altogether Cholia testified that he gave appellant $10,115 although the information charges $4,985.

The case was tried on the theory that the money was obtained by false pretenses. There is no substantial proof that the representations testified to by Cholia, that the money was needed for the purchase of machinery and to work the mine, were false or that the money was not used for those purposes by appellant. A witness for the People, Clift, testified that he was employed by appellant in 1949 from the spring to the fall in cleaning out and retimbering the mine and, over objection on the ground that this antedated the first transaction with Cholia, that up to the time he left in the fall of 1949 no new machinery was purchased for the mine. This evidence had no probative value as to what occurred after Cholia gave his money to appellant, although the trial judge from a remark made from the bench when he was summing up the evidence apparently gave it such construction. The only other evidence

on the subject came from a witness for defendant, Waldner, a mining engineer who testified generally that in his opinion the Pigeon Mine showed good prospects of being made into a profitable mine. He visited the mine in 1933, 1948 and 1949, and "a couple of months" before he testified on March 27, 1953. He testified:

"Q. Was there more equipment when you saw it a couple of months ago than when you saw it in 1948 and '49?

"A. Not so much, no."

■ This one answer is the only evidence relied upon by the People to establish that appellant falsely represented to Cholia that he intended to use his money for the purchase of machinery for the mine. It is too uncertain in character to rise to the dignity of substantial evidence. The transactions between Cholia and appellant occurred between December 20, 1949, and May, 1950. The fact that "not so much" more equipment was in the mine in 1953, three years later, would not establish what was there in 1950, and "not so much" is so vague in itself that it has little probative value. No man should stand convicted of a felony on such tenuous evidence.

■ The People argue in the alternative that the evidence might support a conviction on the theory of embezzlement or larceny by trick and device. Both require that the victim not part with title to his money or property. (Embezzlement: *People* v. *Goodrich,* 138 Cal. 472 [71 P. 509]; *People* v. *Holder,* 53 Cal.App. 45 [199 P. 832]; *People* v. *Petrin,* 122 Cal.App.2d 578 [265 P.2d 149]; Larceny by trick: *People* v. *Edwards,* 72 Cal.App. 102, 113 [236 P. 944]; *People* v. *Shearer,* 83 Cal.App. 321, 331 [256 P. 611].) Here it is clear from the evidence that Cholia parted with title to his money: the first $1,250 to purchase an interest in the mine, the other amounts as loans evidenced by promissory notes. Furthermore the evidence on either theory is no more substantial than on the theory of false pretenses.

There are suspicious circumstances connected with the dealings between Cholia and appellant which indicate that evidence might have been produced by the prosecution to support a conviction. The prosecution, to say the least, treated the case cavalierly. But suspicion cannot take the place of proof, and on the evidence presented no case was proved.

■ Appellant argues that since the information is not supported by the evidence at the preliminary hearing his motion to dismiss the information on that ground should have been granted. At the preliminary hearing Cholia testified

positively without objection that appellant purchased no machinery for the mine. On the trial it developed that this was hearsay and Cholia was not permitted to give such testimony. On the evidence before the committing magistrate the elements of the crime were sufficiently proved.

The judgment is reversed and the case remanded for a new trial.

Nourse, P. J., and Kaufman, J., concurred.

A petition for a rehearing was denied June 7, 1954, and respondent's petition for a hearing by the Supreme Court was denied June 23, 1954.