[Crim. No. 228.  First Appellate District.—May 30, 1910.]

THE PEOPLE, Respondent, v. E. W. EMMONS, Appellant.

CRIMINAL LAW—MODE OF DETERMINING SUFFICIENCY OF INDICTMENT.— The correct way to determine the sufficiency of an indictment is to take its language in its ordinary accepted meaning, and its statements as to the matters and things that defendant did, and then compare them with the statute which it is claimed has been violated, for the purpose of determining the question as to whether or not the defendant is charged in plain language with having done a particular act or thing which is made a crime by the statute.

ID.—OBTAINING MONEY UNDER FALSE PRETENSES—SUFFICIENCY OF INDICTMENT.—An indictment stating that defendant did on a specified day, knowingly, falsely and fraudulently, pretend and represent to

a person named, that he, the said defendant, was the sole owner of a mining claim described, and that there was then being erected and constructed on said mine a ten-stamp mill, and that all litigation concerning the mining claim was settled, and which avers the particular falsity of each and all of said pretenses and representations, and that such person, believing each and all of them to be true, was thereby induced to deliver to defendant the sum of $500, and that defendant fraudulently and feloniously received, took and carried away the same, sufficiently states the crime set forth in section 582 of the Penal Code.

Id.—Unnecessary Averments—Evidentiary Facts.—It was not necessary, and would have been bad pleading, for the indictment to state what the defendant intended to do with the money, or that the money was never returned to the person defrauded, or any other evidentiary fact.

Id.—Matter of Defense.—If the defendant did not obtain the money in the manner charged in the indictment, or if it was paid to him with full knowledge of all the facts and circumstances, or if it was a loan, or given to him for the purpose of depositing in bank, such fact or facts could be shown by him in defense.

Id.—Purpose of Indictment Answered.—The indictment has answered its purpose when it fully and fairly informs the defendant of the acts he is accused of, so that he can prepare for his defense and defend himself as to such acts, and so that it can be determined, as matter of law, whether or not such facts as are alleged in the indictment constitute a crime under the statute; and the indictment is sufficient if the acts stated show a violation of the statute.

Id.—Demurrer to Indictment and Motion in Arrest of Judgment Properly Overruled.—The indictment being sufficient, a demurrer thereto, and a motion in arrest of judgment for its insufficiency, were properly overruled.

Id.—Support of Verdict.—The evidence is held sufficient to support the verdict of guilty of the offense charged.

Id.—Defendant's Right to Stand Mute—Prejudicial Error in Refusing Instruction — Impertinent Substitution — Reversal.— The court erred to defendant's prejudice, requiring a reversal in refusing his requested instruction that "the defendant has a legal right to take the stand as a witness, or not to do so, just as he pleases, or as his counsel may advise. The mere fact that he does not testify raises no presumption or prejudice against him, and the jury cannot draw any unfavorable inference against a defendant who does not offer himself as a witness"; and in substituting in lieu thereof section 1323 of the Penal Code, involving the impertinent right to cross-examine a defendant who testifies.

ID.—RIGHT OF DEFENDANT TO FAIR TRIAL — CORRECT INSTRUCTION NOT ROBBED OF FORCE.—The defendant was entitled to a fair trial, and to a correct instruction pertinent to the issue, without having it coupled with another statement not pertinent to the issue, which robbed it of all its force as to defendant's rights.

ID.—CONSTITUTIONAL RIGHTS OF DEFENDANT.—The defendant has the constitutional right to stand mute, without unfavorable presumption from his silence, and to demand that the prosecution prove the case against him beyond a reasonable doubt.

ID.—DUE ADMINISTRATION OF JUSTICE—ABSENCE OF PREJUDICIAL INSTRUCTIONS.—It tends to the due and proper administration of justice for the trial court to leave the jury entirely free to pass upon each and every fact and phase of the case, without any prejudicial instructions, or any intimation by the court as to the weight of the evidence. When an instruction is asked for by a defendant which contains a correct statement of the law, and is pertinent to the issue and the evidence, it should be given, without being weakened or emasculated by an additional statement not so pertinent, although in the abstract containing a correct statement of the law.

ID.—CONDITIONAL INSTRUCTION AS TO CROSS-EXAMINATION OF DEFENDANT IMPROPER.—No occasion can arise during a trial of a criminal case for giving the jury an instruction as to the fact that the defendant could be cross-examined, if he should be a witness, when he is not a witness. If he were a witness, the court and not the jury would determine the question of his cross-examination and the extent thereof; and the jury should not be given an instruction as to substantive law which is for the court and not for the jury under any circumstances.

ID.—ERROR IN REFUSING INSTRUCTION AS TO REASONABLE DOUBT OF FALSE PRETENSES CHARGED.—It was error for the court to refuse an instruction requested by defendant as follows: "If you should have a reasonable doubt in your minds as to whether the prosecuting witness parted with her money because of the representations set forth in the indictment, or any of them, or whether, on the other hand, she so acted by reason of and induced by other or different representations, then you should give the defendant the benefit of the doubt, and your verdict should be not guilty."

ID.—GIST OF CHARGE — SUBSTANCE OF REPRESENTATIONS ESSENTIAL — OTHER INDUCEMENTS—MAIN CAUSE OF LOSS OF MONEY.—The false pretenses stated are of the gist of the offense charged, and the substance of them must be proved beyond a reasonable doubt. It is not necessary, however, that they shall be the sole inducement, since other false pretenses may have co-operated therewith; but it is essential that the false pretenses charged should have been the

main cause that operated in the mind of the prosecuting witness when she parted with her money.

ID.—APPEAL—ARGUMENT—ERRORS NOT POINTED OUT IN BRIEF.—When counsel rely upon other errors in the giving or refusing of instructions, it is due to this court that the brief of the appellant should call attention to the facts and the law sufficient to show in what way the giving or refusing of the instruction injures the defendant appealing.

ID.—EVIDENCE—FALSE REPRESENTATIONS AS TO NUGGET CHAIN—GUILTY INTENT—KNOWLEDGE OF FALSITY OF STATEMENTS CHARGED.—Evidence was admissible to show false representations by defendant to the prosecuting witness that a nugget chain shown her in the presence of a witness was made of nuggets taken from the mine. In this class of cases, evidence of similar offenses, involving the making of other false representations is admissible to show that he is aware of the falsity of the statements made by him in the particular case on trial. The law is liberal in allowing other false statements to be shown, for the purpose only of showing guilty intent, or guilty knowledge of the falsity of statements that the party is making.

ID.—REOPENING CASE TO PROVE ADMISSIONS BY DEFENDANT—SPECULATION AS TO DEFENDANT BECOMING WITNESS.—The district attorney relying upon admissions made by defendant on a former trial should have proved them in chief; and the practice should not be tolerated of his reliance upon the uncertain event of the defendant taking the stand in his own behalf, so as to make them part of his case on cross-examination. In such case the district attorney did not stand in a favorable position to ask or invoke the discretion of the court to reopen his case, to prove such admissions; but the discretion of the court in allowing it is not passed upon, in view of reversal upon other grounds.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco, and from an order denying a new trial. Wm. P. Lawlor, Judge.

The facts are stated in the opinion of the court.

Joseph A. Brown, and Thomas V. Cator, for Appellant.

U. S. Webb, Attorney General, and J. Charles Jones, for Respondent.

COOPER, P. J.—The defendant was convicted of the crime of obtaining money by false pretenses, and sentenced to a

term of six years in the state prison at San Quentin. He prosecutes this appeal from the judgment and from the order denying his motion for a new trial.

It is contended that the court erred in overruling the defendant's demurrer to the indictment and also in denying his motion in arrest of judgment. As each of said contentions depends upon the question as to whether or not the indictment states facts sufficient to constitute a public offense, we will consider them together.

The way, and the only correct way, to determine the sufficiency of an indictment is to take its language in its ordinary accepted meaning, and its statements as to the matters and things that defendant did, and then compare them with the statute which it is claimed has been violated, for the purpose of determining the question as to whether or not the defendant is charged in plain language with having done a particular act or thing which is made a crime by the statute. (*People* v. *Schmitz,* 7 Cal. App. 330, [94 Pac. 407, 419].) The Penal Code (section 532) provides that every person who knowingly, by any false or fraudulent representation or pretense, defrauds another person of money, is punishable in the same manner and to the same extent as for larceny of the money so obtained. The indictment states that the defendant did, on the day named therein, knowingly, feloniously and fraudulently pretend and represent to Mrs. M. E. Hurst that "he the said defendant was then at said time the sole owner of a certain mine or mining claim and real property called 'Drummer Boy Mine,' located at Siskiyou county in the state of California, and that there was then at said time being erected and constructed at said mine upon said property a ten-stamp mill, and that the said mine and property had been in litigation for over thirty years, but that the said litigation had then been and was then all settled; whereas in truth and in fact said defendant was not then or at any time the sole owner of said mine, mining claim and real property, and there was not then or at any time a ten-stamp mill or any mill being erected or constructed at said mine or upon said property; and the said mine and property had not then or at any time been in litigation for over thirty years, but in truth and in fact the said mine and property was then at said time in litigation, and said litiga-

tion had not then at said time been all settled or settled at all.'' It further states that Mrs. Hurst, believing the said false representations to be true, and solely by reason of them, was induced to and did deliver to defendant the said sum of $500, and that defendant fraudulently and feloniously received, took and carried away the same. This is sufficient under the statute. It is not necessary, and indeed would have been bad pleading, for the indictment to state what the defendant did or intended to do with the money, or that the money was never returned to Mrs. Hurst, or any other evidentiary fact. If the defendant did not obtain the money in the manner charged in the indictment, or if it was paid to him with the full understanding of all the facts and circumstances, or if it was a loan, or given to him for the purpose of depositing in a bank, such fact or facts could have been shown by him in defense. The indictment has answered its purpose when it fully and fairly informs the defendant of the acts he is accused of, so that he may prepare for his defense and defend himself as to such acts, and so that it may be determined as a matter of law whether or not such facts as are alleged in the indictment constitute a crime under the statute. If the acts as stated show a violation of the statute, the indictment is sufficient. We therefore conclude that the demurrer was properly overruled, and the motion in arrest of judgment properly denied.

We have examined the evidence, and we find it sufficient to support the verdict, and it is not necessary to further discuss it.

After the case was closed on behalf of both prosecution and defense, and the defendant had rested, the district attorney claimed that he had been surprised by the defendant not calling and examining certain witnesses (evidently referring to the fact that the defendant had not taken the stand as a witness in his own behalf), and that for this reason he had not put in a material declaration or admission made by defendant on a former trial of the same charge, as he expected to elicit such evidence on cross-examination. The court, under the objection of defendant, reopened the case, and the district attorney was permitted to and did read a portion of defendant's evidence given on a former trial. Defendant then asked the court, after the evidence was con-

cluded, to instruct the jury as follows: ''The defendant has a legal right to take the stand as a witness, or not to do so, just as he pleases or as his counsel may advise. The mere fact that he does not testify raises no presumption or prejudice against him, and the jury cannot draw any unfavorable inference against a defendant who does not offer himself as a witness.'' The court refused the instruction, but in lieu thereof read section 1323 of the Penal Code as an instruction to the jury, which section and instruction is as follows: ''A defendant in a criminal action or proceeding cannot be compelled to be a witness against himself, but if he offer himself as a witness, he may be cross-examined by the counsel for the people as to all matters about which he was examined in chief. His neglect or refusal to be a witness cannot in any manner prejudice him or be used against him on the trial or proceeding.''

This was error, and clearly injurious to the defendant. The instruction as requested contained a correct statement of the law pertinent to the issue, and under the circumstances it was very material to the defendant that it should have been given. The court, in effect, instead of telling the jury that a failure of the defendant to testify should not create a prejudice or unfavorable inference in the minds of the jury, told them that a defendant could not be compelled to be a witness against himself, ''but if he offer himself as a witness, he may be cross-examined by the counsel for the people as to all matters about which he was examined in chief.'' It was not a question before the jury as to what could be done if the defendant had taken the stand as a witness for himself, nor as to whether he could be compelled to testify against himself. It seems, therefore, plainly apparent that the effect of reading section 1323 of the Penal Code was to inform the jury that the fact that defendant, if he had taken the stand, could have been cross-examined was probably the reason why he did not take the stand as a witness. If this were not so, why did the court read the law to the jury as to the effect of something that had not occurred instead of giving the instruction as requested?

The defendant was entitled to a fair trial. He was entitled to a simple statement of the law pertinent to the issue, without having it coupled with another statement, not per-

tinent to the issue, which robbed it of all its force as to defendant's rights. He had the right to stand mute. No presumption is raised against him by the law if he choose to remain silent. (*People* v. *Streuber,* 121 Cal. 432, [53 Pac. 918].) In *People* v. *Cuff,* 122 Cal. 589, [55 Pac. 407], the defendant did not take the stand as a witness, and the court instructed the jury: "The court instructs you that the evidence is to be estimated not only by its own intrinsic weight but also according to the evidence which it is in the power of one side to produce and of the other to contradict, and that therefore if weaker or less satisfactory evidence is offered, and it appears that stronger or more satisfactory evidence was within the power of the party, the evidence offered should be viewed with distrust."

The instruction given in that case was correct as an abstract proposition of law, and evidently was founded on section 2061, subdivisions 6 and 7, of the Code of Civil Procedure; but the court held its effect was to emphasize the fact that the defendant had not taken the stand in his own behalf, and that the giving of it was prejudicial error. The court in discussing the matter said: "Let us consider one objection to it. Here there is no suggestion whatever in the record that any important witness could have been produced by the defendant before the jury and was not produced. Under such circumstances certainly the occasion was not a proper one upon which to give the instruction. But, upon the other hand, the defendant did not take the stand, and the practical application of the instruction necessarily points to that fact as a strong circumstance to be taken against him. To the ordinary mind there seems to have been no other reason or purpose in the giving of the instruction. Yet a defendant has the constitutional right to stand mute and demand that the prosecution prove the case against him beyond a reasonable doubt."

The reasoning there applies with much force to this case. The defendant had not offered himself as a witness, so why should the court of its own volition have stated to the jury that if he had taken the stand he could have been cross-examined? It was most prejudicial and damaging to the defendant. It ordinarily tends to the due and proper administration of justice for the trial court to leave the jury

entirely free to pass upon each and every fact and phase of the case without any prejudicial instructions, or any intimation by the court as to matters of fact or as to the weight of evidence. When any instruction is asked by a defendant which contains a correct statement of the law and is pertinent to the issue and to the evidence, it should be given. The court should not weaken or emasculate an instruction by coupling with it a sentence or statement not pertinent to the issue or the evidence, although in the abstract containing a correct statement of the law. We cannot conceive of any occasion arising during the trial of a criminal case for giving the jury an instruction as to the fact that the defendant could be cross-examined if he should be a witness. If he was not a witness and had not offered himself as such, certainly the instruction should not have been given. If he had offered himself as a witness the court, and not the jury, would determine the question of his cross-examination and the extent thereof. It was wholly unnecessary for the court to voluntarily state to the jury a proposition of substantive law which is for the court and not for the jury under any circumstances.

The court also erred in refusing defendant's requested instruction numbered 16, which is as follows: "If you should have a reasonable doubt in your minds as to whether the prosecuting witness parted with her money because of the representations set forth in the indictment, or any of them, or whether, on the other hand, she so acted by reason of and induced by other or different representations, then you should give the defendant the benefit of that doubt, and your verdict should be not guilty."

If the jury entertained a reasonable doubt as to whether Mrs. Hurst parted with the money by reason of the representations set forth in the indictment, they should have acquitted defendant. The indictment charges that Mrs. Hurst was induced by said false representations and pretenses. That is the gist of the charge; and certainly if that is not true, and the money was obtained by other or different means or representations the defendant should not have been convicted. It is true that the false representations and pretenses charged may not have been the sole inducement, or, in other words, other causes or pretenses or promises may

have in such cases acted in connection with and in aid of the alleged false representations; but at the same time the false pretenses and representations charged in the indictment must have been the main cause that operated on the mind of the complaining witness when she parted with the money. The jury should have been satisfied beyond a reasonable doubt that the representations and pretenses charged in the indictment caused Mrs. Hurst to part with her money. If this were not so the jury might have convicted, although not satisfied beyond a reasonable doubt that the prosecution had proven the material allegations of the indictment.

The refusal of the court to give other instructions requested by defendant is pointed out as error by calling attention to the number of such instructions separately, and stating that the court erred in refusing them. As we have said many times before, when counsel rely upon error in the giving or refusing of an instruction, it is due to this court that the brief should at least call attention to the facts and the law sufficient to show in what way the giving or refusing of the instruction injured the defendant. However, we have examined the requested instructions, and the court no doubt properly refused the greater number of them, or gave instructions which substantially covered the subject matter thereof. Others might properly have been given, but we are not prepared to say, in view of the whole record, that the refusal of the court to give any one of them was error sufficient to justify a reversal of the case.

The claim is made that the court erred in receiving the evidence of the witness Cook as to representations made by defendant to Mrs. Hurst about a gold nugget chain which he said was made from nuggets picked up at the mine the stock of which he was trying to sell to Mrs. Hurst. The record shows that the witness testified without objection to the fact that defendant showed Mrs. Hurst the chain, and told her that the nuggets of which it was made came out of the mine. Some of the nuggets were small and some of them large and rough-shaped. The objection to the testimony was made later, when the witness was asked to describe the size and shape of the nuggets. If any error was committed it had been committed before the defendant objected to the testimony; but without regard to the form or

time of the objection, we are not prepared to say that the evidence was inadmissible. In this class of cases evidence of similar offenses, involving the making of other false representations, is admissible against the defendant to show that he is aware of the falsity of the statements made by him in the particular case on trial. The law is liberal in allowing other false statements to be proven for the purpose, and only for the purpose, of showing such guilty intent or purpose, or guilty knowledge of the falsity of the statements that the party is making. (2 Underhill on Criminal Evidence, star pp. 672, 673; *People* v. *Whalen,* 154 Cal. 472, [98 Pac. 194].) Of course the evidence must tend to show a guilty intent, in connection with the crime under investigation, and must not be received to show other and distinct crimes which have no bearing upon the question of guilty intent or knowledge as to the crime for which the defendant is being tried.

What has been said applies to several other alleged errors as to testimony of similar transactions.

It is urged with much earnestness that the court erred in reopening the case at the request of the district attorney for the purpose of allowing him to prove certain statements made by the defendant on a former trial. The district attorney should have put in all his evidence in chief, and not have relied upon the uncertain event of the defendant taking the witness-stand in his own behalf so that he could make out a part of his case by cross-examination. Such practice is not to be tolerated. Of course in cases where the district attorney has inadvertently or through ignorance omitted to put in certain material evidence, but has acted in good faith, and the court is satisfied that he has so acted, it should be liberal in allowing the case to be reopened, so that it may be fully tried upon all the facts; but in case the district attorney deliberately keeps back a part of his testimony so as to surprise the defendant by bringing it out in cross-examination, at the same time speculating upon the contingency as to whether or not the defendant will take the stand, a more serious question arises. It may certainly be said that in such case the district attorney does not stand in a very favorable position to ask or invoke the discretion of the court to reopen his case. However, it is not necessary for us to pass upon the question as to whether or not the court abused

its discretion, for the reason that upon a retrial of the case the district attorney will certainly not again speculate on the chances of the defendant taking the stand as a witness in his own behalf.

We do not deem it necessary to discuss any other point. For the error in refusing the instructions asked by defendant as herein pointed out, the judgment and order are reversed, and the case remanded for a new trial.

Kerrigan, J., and Hall, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on July 28, 1910.