[No. B089797. Second Dist., Div. Six. May 7, 1996.]

THE PEOPLE, Plaintiff and Respondent, v.
MICHAEL WOOTEN, Defendant and Appellant.

## COUNSEL

Eskin & Jackson, Diane M. Matsinger and George C. Eskin for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Carol Wendelin Pollack, Assistant Attorney General, Kenneth C. Byrne and Lisa J. Brault, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**YEGAN, J.**—Michael Wooten appeals from the judgment entered on a jury verdict convicting him of one count of felony grand theft. (Pen. Code, § 487.)[1] The jury determined that appellant obtained $10,000 from a construction lender by misrepresenting to the lender that the money would be used to pay a specified licensed general contractor for supervising a construction project. In fact, appellant, who was not a licensed contractor, personally supervised the construction and kept the money for himself and his partner. This is grand theft.

Appellant contends: (1) the trial court erroneously restricted the presentation of defense evidence; (2) the prosecution could not, as a matter of law, establish theft on a false pretense theory; and (3) the jury was erroneously instructed. We affirm.

### Facts

Appellant and his partner, Frank Marasco (Marasco), were the principals of Darrik-Marten Company (Darrik-Marten), a firm engaged in real estate development. They obtained a $550,000 loan from Community Group Funding, Inc. (CGF) to construct a subdivision in Santa Paula. The two-page loan agreement states, "[t]he loan will consist of the following disbursements:" (1) $110,000 to Darrik-Marten; (2) $172,000 for loan fees, a payment to Darrik-Marten and interest reserves; and (3) $268,000 for construction costs and interest reserves.

---

[1]At the probation and sentencing hearing, the trial court reduced the conviction to a misdemeanor and granted probation.

The loan agreement does not establish a procedure to be used in requesting disbursements under the loan or state whether CGF could deny such requests. Although Darrik-Marten used letters to request the first two disbursements, it used a voucher to request funds for construction costs, including the payment at issue here. The voucher certified that the payee, Gary Johnson Construction, "actually performed work or labor, . . . in connection with, or upon the above described construction project . . . and that the sum set forth above [$10,000] actually has been paid or will be paid by the undersigned to the person or firms named."

Before the loan agreement was signed, Darrik-Marten did not discuss with CGF whether it would hire a general contractor for the project. After the agreement was signed, however, appellant and Marasco told CGF that Gary Johnson (Johnson) had been hired as the general contractor and would be paid $16,000. In February 1992, appellant submitted a construction budget to CGF which listed Johnson as the general contractor. Johnson also signed the building permit and subcontracts. In fact, appellant and Johnson agreed that CGF would pay the fee to Johnson, that Johnson would return the fee to Darrik-Marten and that appellant would supervise the project himself.

On March 9, 1992, appellant's partner mailed to CGF a voucher for a $10,000 payment to Johnson. The voucher was accompanied by an invoice from Johnson for "[s]upervision of tract 4753 which includes building of roads [and] cul-de-sac [and] all underground utilities." Marasco also sent a letter falsely stating: "I've included the next draw for our contractor, Gary Johnson, in yesterday's mailing. [¶] He won't receive another payment until after all the work is complete, and the City has signed it off. Normally we pay him monthly, but this job shouldn't take more than six weeks. [¶] Gary will want to begin right away."

Ten days later, CGF wrote a check to Johnson for $10,000. Appellant gave the check to Johnson and Johnson gave appellant his own check for the same amount. Appellant deposited Johnson's check into the Darrik-Marten account and immediately paid himself $5,000. It is undisputed that $10,000 was a reasonable supervision fee and was $6,000 less than the amount budgeted.

Don Lukens, the owner of CGF, was responsible for approving disbursements under the loan. It was his understanding that the loan agreement did not expressly require Darrik-Marten to use a general contractor or give CGF the right to reject a contractor retained by Darrik-Marten. Nevertheless, Lukens thought it was important to have a general contractor working on the project, and he believed appellant and Marasco when they told him that

Johnson would perform as the licensed contractor. He also believed in and relied upon the information contained in Marasco's correspondence.

Lukens acknowledged that the loan agreement did not expressly allow CGF to withhold loan disbursements so long as the funds requested were actually used on the project. He testified, however, that he approved the disbursement to Johnson based upon his understanding that Johnson was the licensed general contractor working on the project. Lukens unequivocally testified that he would not have paid Johnson if he had known the truth.

When Darrik-Marten lost the project in foreclosure, appellant got a job managing a small cardroom in Oxnard. He and Marasco then applied for a permit to build their own cardroom. While the application was pending, the Ventura County District Attorney began to investigate appellant. By late spring 1993, appellant knew he was under investigation for making illegal campaign contributions.

The $10,000 payment to Johnson was discovered during the course of that investigation. In early August 1993, Johnson and Lukens agreed that an investigator could tape-record their telephone conversations with appellant. During the first conversation, appellant told Lukens and CGF's attorney that he did not know why Johnson had returned the $10,000 to Darrik-Marten. Appellant also assured Lukens that Johnson actually performed work on the project.

During the second conversation, appellant asked Johnson to exaggerate his involvement in the project: "[H]ere's how I want to couch that, okay? And see, see if you can live with this. [Y]ou helped me get the thing put together on the front end. [¶] . . . [¶] You know, you just walked it with me and told me what we needed to do. That kind of stuff. And . . . I want to take the position that we were gonna use you and that, uh, you know, we just decided not to. Um, and that we had already paid you the first installment and when we decided not to use you, you gave us the money back. [¶] . . . [¶] [Johnson]: Jesus, I don't know. Um, because, you know, technically, you know, we lied about this thing. [¶] [Appellant]: You know I know that." When Johnson expressed concerns about lying, appellant told him nothing would happen if they both told the same story because, "nobody, nobody can prove it one way or the other, the two of us saying that."

*Limitations on the Presentation of Defense Evidence.*

■ At trial, the prosecution argued that the taped telephone conversation demonstrated appellant's consciousness of guilt. Appellant attempted to

rebut that inference by explaining that, during the conversations, he believed he had not breached the loan agreement or violated any criminal laws. Instead, appellant believed the district attorney was investigating him to destroy his chances of obtaining a cardroom permit and he felt "confused" and "pressured" by the investigation. Therefore, appellant wanted an explanation that would "make the whole thing go away as quickly as possible . . . ."

Appellant argues that he was denied a fair trial because the trial court prevented him from introducing evidence to corroborate these claims. The argument fails.

Although "wide latitude should be given to cross-examination" the trial court retains discretion to prohibit the introduction of evidence that is confusing or unduly time consuming. Its exercise of that discretion will not be overturned in the absence of a clear abuse. (*People* v. *Cooper* (1991) 53 Cal.3d 771, 816 [281 Cal.Rptr. 90, 809 P.2d 865].) There is no indication that appellant's presentation of evidence was limited by anything other than the hearsay rule, appellant's failure to provide proper foundation, and other noncontroversial evidentiary rulings. The trial court did not curtail appellant's cross-examination of Johnson and Marasco. Appellant's counsel voluntarily terminated it. The reporter's transcript of Johnson's and Marasco's cross-examination is 35 and 42 pages, respectively.

Similarly, appellant was allowed to explain what he meant by his comments to Johnson and Lukens, the context in which the district attorney's investigation occurred and the effect that investigation had on his state of mind. In sum, appellant presented his version of the facts to the jury and the jury rejected it. No error occurred.

### Theft by False Pretenses

██ A theft conviction on the theory of false pretenses requires proof that (1) the defendant made a false pretense or representation to the owner of property; (2) with the intent to defraud the owner of that property; and (3) the owner transferred the property to the defendant in reliance on the representation. (*Perry* v. *Superior Court* (1962) 57 Cal.2d 276, 282-283 [19 Cal.Rptr. 1, 368 P.2d 529]; *People* v. *Whight* (1995) 36 Cal.App.4th 1143, 1151 [43 Cal.Rptr.2d 163].) In this context, reliance means that the false representation "materially influenced" the owner's decision to part with his property; it need not be the sole factor motivating the transfer. (*People* v. *Ashley* (1954) 42 Cal.2d 246, 259 [267 P.2d 271].) A victim does not rely on a false representation if "there is no causal connection shown between the

[representations] alleged to be false" and the transfer of property. (*People* v. *Bliss* (1920) 47 Cal.App. 503, 506 [190 P. 1046]; see also *People* v. *Canfield* (1915) 28 Cal.App. 792, 795 [154 P. 33]; *People* v. *Emmons* (1910) 13 Cal.App. 487, 495-95 [110 P. 151].) Thus, if the defendant makes both true and false statements to the owner, but the false statements are irrelevant to the owner's decision to transfer the property, theft on the theory of false pretense has not been committed. (*People* v. *Bliss*, *supra*, 47 Cal.App. at p. 506.) Reliance may be inferred from all the circumstances. (*People* v. *Randono* (1973) 32 Cal.App.3d 164, 174 [108 Cal.Rptr. 326].)

■ Appellant argues his conviction must be reversed because the jury was instructed on an erroneous theory of grand theft and it is impossible to determine whether the verdict was based in whole or in part on that theory. (*People* v. *Green* (1980) 27 Cal.3d 1, 69 [164 Cal.Rptr. 1, 609 P.2d 468].) According to appellant, false pretense does not apply as a matter of law because appellant did not procure the loan agreement through fraud and once that agreement was signed, CGF had no choice but to approve every request for disbursement submitted by Darrik-Marten. Thus, when Lukens approved the March 9, 1992, request for payment, he relied solely upon a preexisting contractual obligation and not upon any representation concerning Johnson's involvement in the project.

Appellant's argument fails. There is no express term requiring CGF to "rubber-stamp" every disbursement request submitted by Darrik-Marten, no matter how false or inaccurate. By appellant's theory, a party to a contract who, at first, honestly obtains a loan commitment has an entitlement to disbursements even if he or she, with criminal intent, thereafter lies to obtain the disbursements without building the project for which the loan was obtained. If nothing else, the implied covenant of good faith and fair dealing allowed CGF to insist upon accurate information from Darrik-Marten and to refuse disbursements when based upon prevarication.

Moreover, there is evidence that the parties established a course of dealing which allowed CGF to refuse loan disbursements under these circumstances. Lukens believed that he had the ability to deny or delay disbursements based on irregularities in a voucher or other problems with the project. Lukens also testified that he in fact relied on the statements included in the March 9, 1992, voucher and invoice. He expressly testified that he would not have approved the payment to Johnson had he known Johnson would not perform any work on the project. Appellant and his partner shared that understanding. They chose to use a voucher form which specifically declared that the person named in the voucher had done the work described and would be paid for it. Marasco falsified the request for payment because he was afraid CGF would not approve, or would delay the disbursement if it knew the truth.

In sum, the evidence concerning the loan agreement and the parties' course of dealing did not establish, as a matter of law, that CGF had no alternative but to approve the March 9 voucher. Accordingly, it was legally permissible for CGF to rely on the representations and the trial court did not err in presenting the theft by false pretense theory to the jury.

*Jury Instructions—False Pretense*

■ Appellant contends the trial court erred in refusing to instruct the jury that, if it found CGF had a legal obligation to approve the March 9, 1992, voucher, CGF could not have relied on the information stated in the voucher. The trial court correctly refused this instruction because the subject of reliance was adequately addressed in the standard instructions on false pretenses. (CALJIC Nos. 14.10, 14.11 (5th ed. 1988 bound vol.).)

The jury was informed that it could not convict appellant on this theory unless it found that a misrepresentation was believed by CGF and "was material in inducing [CGF] to part with [its] money . . . even though the false . . . representation . . . was not the sole cause . . . ." In addition, the jury was instructed to acquit if it found that CGF, "for any reason" did not rely on the representations made by appellant. These instructions allowed the jury to acquit if it found that CGF relied on something other than appellant's statements concerning Johnson's work. Indeed, appellant's counsel argued this theory of defense extensively in closing.

Nor did the trial court err by refusing to instruct the jury that CGF had a "pre-existing legal obligation" to disburse the $10,000 pursuant to the March 9, 1992 voucher request.

*People* v. *Tufts* (1914) 167 Cal. 266 [139 P. 78], does not require such an instruction. In *Tufts*, the defendant obtained a loan by misrepresenting that he had a power of attorney to pledge his wife's property as collateral. He claimed that a Texas statute authorized him to deal in his wife's property even without her consent. The Supreme Court held it was error to refuse an instruction on the Texas statute because "the nonexistence of the power of attorney would be immaterial" if the statute authorized defendant's actions. (*Id.* at p. 269.) While the lender had the right to security for the loan, "that does not mean that he was entitled to enforce it only upon the theory that the defendant held a written power of attorney. . . . Where the prosecutor [moving party] gets out of the transaction just what he bargained for no offense is committed." (*Id.* at pp. 269-270.)

Even if *Tufts* remains good law, it is distinguishable because CGF did not "get[] out of the transaction just what [it] bargained for . . . ."[2] (167 Cal. at p. 270.) In the disbursement process, CGF gave $10,000 to Johnson, a licensed general contractor who CGF believed had the experience necessary to complete the project within the budget. CGF did not give appellant $10,000 because it believed that he was a licensed contractor supervising the completion of the project.

*Jury Instructions—Embezzlement*

The trial court gave two instructions on embezzlement. The first quoted Penal Code section 484c which provides: "Any person who submits a false voucher to obtain construction loan funds and does not use the funds for the purpose for which the claim was submitted is guilty of embezzlement." The second was the standard instruction on the elements of embezzlement. (CALJIC No. 14.07.) This instruction was intended by the trial court to "define" the term embezzlement as it is used in section 484c. It informed the jury that embezzlement occurs only where: "1. A relation of trust and confidence existed between two persons, [¶] 2. Pursuant to such relationship one of those persons accepted property entrusted to [him] by the other person, and [¶] 3. With the specific intent to deprive the person of [his] property, the person appropriated or converted it to [his] own use or purpose."

■ Appellant contends the trial court erred in giving this instruction because Darrik-Marten and CGF did not have the required relationship of trust and confidence. We agree. The crime of embezzlement requires the existence of a "relation of trust and confidence," similar to a fiduciary relationship, between the victim and the perpetrator. " 'If the relation is that of creditor and debtor merely, an appropriation by the latter does not constitute embezzlement.' " (*People* v. *Petrin* (1954) 122 Cal.App.2d 578, 581 [265 P.2d 149].) There is no fiduciary or "special" relationship between a real estate developer and its construction lender. (*Peterson Development Co.* v. *Torrey Pines Bank* (1991) 233 Cal.App.3d 103, 119 [284 Cal.Rptr. 367]; *Mitsui Manufacturers Bank* v. *Superior Court* (1989) 212 Cal.App.3d 726, 729 [260 Cal.Rptr. 793]; *Gomez* v. *Volkswagen of America, Inc.* (1985) 169 Cal.App.3d 921 [215 Cal.Rptr. 507].) There was no evidence indicating the relationship between appellant and CGF was anything other than a

---

[2]It is questionable whether *Tufts*'s "no harm, no foul" analysis still applies. Recent cases hold that damage or pecuniary loss is not an element of theft by false pretenses. (See, e.g., *People* v. *Marsh* (1962) 58 Cal.2d 732 [26 Cal.Rptr. 300, 376 P.2d 300]; *People* v. *Brady* (1969) 275 Cal.App.2d 984 [80 Cal.Rptr. 418]; *People* v. *Schmitt* (1957) 155 Cal.App.2d 87 [317 P.2d 673]; *People* v. *Raines* (1944) 66 Cal.App.2d 960, 962 [153 P.2d 424]; see also CALJIC No. 14.12.)

standard debtor-creditor relationship. Accordingly, the general embezzlement instruction ought not to have been presented to the jury.

The error was, however, harmless because its only effect was to force the prosecution to carry a heightened burden of proof. The rule relied upon by appellant in *People v. Green, supra,* 27 Cal.3d 1, 69 (see *ante,* p. 1843) has been questioned by our Supreme Court. (*People v. Harris* (1994) 9 Cal.4th 407, 419, fn. 7 [37 Cal.Rptr.2d 200, 886 P.2d 1193].) Of course, only the Supreme Court may address the continuing vitality of *Green, supra,* In our view the *Green* rule does not require reversal here. Here, the theft conviction is "legally sufficient" based upon a false pretense theory and a Penal Code 484c embezzlement theory.

That the legally insufficient theory of general embezzlement is presented does not dictate reversal. Here there is a way by which we " '. . . can determine that error in the *Green* situation is harmless.' " (*People v. Harris, supra,* 9 Cal.4th at p. 419, fn. 7.) "It is impossible to understand how an error which increased the People's evidentiary burden could have prejudiced appellant." (*People v. Counts* (1995) 31 Cal.App.4th 785, 793 [37 Cal.Rptr.2d 425].)

Moreover, in California, the various common law theories of theft, including embezzlement, have been consolidated. "[U]nder section 484, there is simply one consolidated crime of theft, which the jury may find upon either theory, if there is an 'unlawful [taking]' . . . ." (31 Cal.App.4th at p. 793; see also *People v. North* (1982) 131 Cal.App.3d 112, 117-118 [182 Cal.Rptr. 126].) Here, the evidence was sufficient to support a conviction under a false pretenses theory or, as discussed below, under Penal Code section 484c. Any error in instructing the jury on an additional embezzlement theory requiring a "relation of trust and confidence" was harmless beyond a reasonable doubt. (*People v. Swain* (1996) 12 Cal.4th 593, 607 [49 Cal.Rptr.2d 390, 909 P.2d 994].)

*Jury Instructions—Penal Code Section 484c*

Penal Code section 484c provides that an embezzlement occurs when a person "submits a false voucher to obtain construction loan funds and does not use the funds for the purpose for which the claim was submitted . . . ." The trial court's instruction on this section quoted the statute without elaboration.

■ Appellant contends this was inadequate because the statute is not violated if loan funds are used for "bona fide project cost[s]." This argument

relies upon cases interpreting Penal Code section 484b, a statute enacted simultaneously with section 484c. Section 484b provides: "Any person who receives money for the purpose of obtaining or paying for services, labor, materials or equipment and willfully fails to apply such money for such purpose by either willfully failing to complete the improvements . . . or willfully failing to pay for services, labor, materials or equipment provided incident to such construction, and wrongfully diverts the funds to a use other than that for which the funds were received," has committed a crime.

 Penal Code section 484b criminalizes the diversion of construction funds from one project to another. It is intended to protect property owners from "harm resulting from the diversion of construction funds." (*People* v. *Worrell* (1980) 107 Cal.App.3d 50, 55 [165 Cal.Rptr. 459].) Courts construing the statute have reasoned that there is no possibility of harm to the property owner if construction funds are "used on bona fide costs of the project for which they are received . . . ." (*People* v. *Butcher* (1986) 185 Cal.App.3d 929, 938 [229 Cal.Rptr. 910].) Thus, section 484b is violated only where "the contractor fails either to complete the improvements or pay the costs therefor with the money obtained for that purpose." (*People* v. *Worrell, supra*, 107 Cal.App.3d at p. 56.)

 Appellant contends a similar interpretation should apply to Penal Code section 484c. Pursuant to appellant's theory, section 484c would not be violated if loan funds were used to pay bona fide costs of the project for which they are received. Thus, appellant claims that as long as the voucher was for payment for "supervision" of the project, section 484c has not been violated. Appellant posits other hypothetical instances where he believes the statute would not be violated. However, we decide the case based on the facts in this record. We need not and do not chart a course for the myriad facts and circumstances which may arise in future cases.[3] Nor are we called upon to decide what the result would be if the voucher had only claimed that the $10,000 requested was for "supervision." The instant voucher was specific. It was intended to deceive. It was false, and it worked for the moment. It matters not that this crime was fortuitously discovered in an unrelated investigation.

Construction of the statute as requested by appellant would be unreasonable as a matter of law. Where, as here, the author of the voucher falsely

---

[3]For example, appellant claims that our holding will make the following a crime: a borrower submits a false voucher claiming that the funds will be used to pay the electrician but instead intends to pay and does pay the plumber on the same project. We ask, why would an honest borrower submit such a false voucher?

Appellant also claims that our interpretation of Penal Code section 484c is "hypertechnical" and will lead to "absurd results." We disagree. It is not "hypertechnical" to require that a borrower who obtains loan funds for the express purpose of paying a specific contractor actually use those funds to pay that contractor.

states that a named payee actually has performed or will perform work, Penal Code section 484c is violated. It matters not whether appellant was as good as, or even better than, a licensed contractor. What does matter is that appellant knew he was submitting a false voucher with the intent to deceive the lender.

The plain language of Penal Code section 484c demonstrates that it addresses a different harm than that addressed in section 484b. (*Pacific Southwest Realty Co.* v. *County of Los Angeles* (1991) 1 Cal.4th 155, 167 [2 Cal.Rptr.2d 536, 820 P.2d 1046]; *People* v. *Squier* (1993) 15 Cal.App.4th 235, 241 [18 Cal.Rptr.2d 536].) While section 484b is intended to protect property owners from damage where contractors fail to complete improvements or to pay construction costs, section 484c is designed to protect lenders against dishonest practices by borrowers. Section 484b makes it a crime to willfully fail to complete or pay for a construction project. Section 484c makes it a crime to lie in a request for loan funds and then use the funds for a purpose other than that stated in the request.

Penal Code section 484c is written in language which jurors are readily capable of understanding. (*People* v. *Cantrell* (1992) 7 Cal.App.4th 523, 543 [9 Cal.Rptr.2d 188].) The failure to elaborate on the phrase "the purpose for which the claim was submitted . . . ," was, at most, harmless error. There is no reasonable possibility that more elaborate instructions would have resulted in the jury reaching a different result. This is so because appellant admitted that Johnson did not perform work on the construction project.

*Jury Instructions—Claim of Right*

Penal Code section 511 creates a defense to the crime of embezzlement where "the property was appropriated openly and avowedly, and under a claim of title preferred in good faith, even though such claim is untenable." The trial court refused appellant's requested instructions on this defense because it found them duplicative of instructions on mistake of law and fact. There was no error.

The trial court has an "obligation to instruct on defenses, . . . and on the relationship of these defenses to the elements of the charged offense . . . ." where "[¶] . . . it appears that the defendant is relying on such a defense, or if there is substantial evidence supportive of such a defense . . . ." (*People* v. *Sedeno* (1974) 10 Cal.3d 703, 716 [112 Cal.Rptr. 1, 518 P.2d 913]; *People* v. *Romo* (1990) 220 Cal.App.3d 514, 519 [269 Cal.Rptr. 440].) Here, the trial court had no obligation to give an instruction on the claim of right defense because there was no substantial evidence to support such a defense.

In effect, the claim of right defense provides that, if a defendant takes property in the good faith belief that it belongs to him, the defendant lacks

the intent necessary to commit embezzlement. (*People* v. *Stewart* (1976) 16 Cal.3d 133, 139-140 [127 Cal.Rptr. 117, 544 P.2d 1317]; *People* v. *Photo* (1941) 45 Cal.App.2d 345, 355 [114 P.2d 71].) The defendant must take the property "openly and avowedly . . . ." (Pen. Code, § 511.) If he attempts to conceal the taking, either when it occurs or after it is discovered, the defense is unavailable. (*People* v. *Stewart*, *supra*, 16 Cal.3d at p. 141; *People* v. *Creath* (1995) 31 Cal.App.4th 312, 319-320 [37 Cal.Rptr.2d 336].) The defense also does not apply where, "although defendant may have 'believed' he acted lawfully, he was aware of contrary facts which rendered such a belief wholly unreasonable, and hence in bad faith." (*People* v. *Stewart*, *supra*, 16 Cal.3d at p. 140.)

Here, the appellant's taking was anything but "open[] and avowed[]." He and his partner falsified at least three documents in requesting the funds. They attempted to conceal the substance of the transaction by having Johnson accept the CGF check and use his own check to return the funds to Darrik-Marten. Appellant's lending relationship with CGF and Lukens continued for months after these events occurred, and appellant never informed Lukens of the true state of affairs. When Lukens asked about the incident directly, appellant lied. Moreover, given appellant's experience as an attorney and real estate developer, his claim that he believed in good faith the loan agreement allowed him to engage in this conduct can only be described as unreasonable from a jury's point of view and fatuous from our point of view.

Even if the evidence had supported this defense, any error would be harmless. "[A] failure to instruct where there is a duty to do so can be cured if it is shown that 'the factual question posed by the omitted instruction was necessarily resolved adversely to the defendant under other, properly given instructions.' (*People* v. *Sedeno*, *supra*, 10 Cal.3d at p. 721.)" (*People* v. *Stewart*, *supra*, 16 Cal.3d at p. 141.) To succeed on a claim of right defense, the evidence would have to show that appellant honestly and in good faith believed he was entitled to take the $10,000 CGF paid for Johnson. (*People* v. *Lucero* (1988) 203 Cal.App.3d 1011, 1018 [250 Cal.Rptr. 354]; *People* v. *Navarro* (1979) 99 Cal.App.3d Supp. 1, 10 [160 Cal.Rptr. 692].) Under the mistake instructions given here, the jury was obligated to acquit appellant if it found that he honestly and in good faith made a mistake of fact or law, so that he lacked the "intent to deceive [CGF] . . . ." (CALJIC No. 15.26.) Thus, by convicting appellant, the jury necessarily concluded that appellant did not act honestly or in good faith.

### Jury Instructions—Prior Misdemeanor

Appellant testified that he pled guilty to a misdemeanor relating to illegal campaign contributions. He now contends the trial court erred because it

failed to give an instruction limiting consideration of the prior conviction to the issue of his credibility. There was no error because appellant failed to request such an instruction. ■■■ In the absence of a request, "the trial court has no . . . duty to provide limiting instructions regarding evidence of past criminal conduct, either of uncharged criminal activity or of prior convictions." (*People* v. *Hawkins* (1995) 10 Cal.4th 920, 942 [42 Cal.Rptr.2d 636, 897 P.2d 574]; see also *People* v. *Torrez* (1995) 31 Cal.App.4th 1084, 1091 [37 Cal.Rptr.2d 712]; *People* v. *Kendrick* (1989) 211 Cal.App.3d 1273, 1278 [260 Cal.Rptr. 27].)

### Conclusion

In appellant's petition for rehearing, he claims that our ". . . contempt for appellant's lack of candor appears to be the linchpin of the opinion." This advocatorial "spin" misses the mark. In circumstances such as those here presented, the Legislature has declared that "lack of candor" directed to a construction lender is a crime. No matter how one characterizes appellant's actions, he lied to get the $10,000 and knew that he would not receive the money if he had told the truth. That is grand theft.

The judgment is affirmed.

Gilbert, J., concurred.

**STONE (S. J.), P. J.**—I respectfully dissent.

Appellant represented that payment was sought for supervision of the project by Gary Johnson, a licensed contractor, when in fact the money was ultimately paid to appellant's firm because appellant supervised the project himself. There is no dispute that the money received was a reasonable fee for supervision of the project. Neither is it contended that appellant's supervision caused the project to fail. Essentially, appellant was convicted because he lied. His "lack of candor," to use appellant's euphemism, was perhaps immoral and dishonest. But was it a crime?

A position letter by the Attorney General to the Governor dated July 6, 1965, supporting the enactment of Penal Code[1] sections 484b and 484c stated that Senate Bill No. 722 was designed to meet the urgent problem created by the misapplication of construction funds and "to deter the major malefactor who by his breach of trust injures a homeowner or a financial institution. . . ." Who was injured here? The only reason this "crime" came to light was because of the district attorney's investigation into an unrelated matter. The "victim" did not feel harmed enough to complain about it. My

---

[1] All statutory references are to the Penal Code unless otherwise stated.

reluctance to join in the majority opinion, however, is based upon the majority's conclusion that the instructional error is harmless. It was not.

The crime of diversion of construction funds under section 484b is committed by receiving money for the purpose of obtaining or paying for service, labor, materials or equipment and willfully failing to apply such money for these purposes either by failure to complete improvements for which the funds were provided or by willfully failing to pay for service, labor, materials or equipment incident to the construction, and wrongfully diverting the funds to a use other than that for which they were provided. (*People* v. *Thompson* (1995) 36 Cal.App.4th 843, 851 [42 Cal.Rptr.2d 798].) The purpose of section 484b is to punish fraudulent conversion, and so long as construction funds are used on bona fide costs of the project, there is no conversion. (*People* v. *Butcher* (1986) 185 Cal.App.3d 929, 938 [229 Cal.Rptr. 910].)

In *Butcher*, the reviewing court gave meaning to the conjunction "and" in what it considered an ambiguous phrase: " 'willfully fail[] to complete the improvements for which funds were provided or willfully fail[] to pay for services, labor, materials or equipment provided incident to such construction, *and* wrongfully divert[] the funds to a use other than that for which the funds were received . . . .' " (185 Cal.App.3d at pp. 939-940.) The *Butcher* court resolved the ambiguity by concluding that section 484b is not violated unless the wrongful diversion is a cause of the failure to complete the project or defray its expenses. (185 Cal.App.3d at p. 940.)

I agree with the majority that sections 484b and 484c must be directed to different wrongs or else there would have been no purpose in the Legislature's enacting both sections. I do not agree with the majority's analysis of section 484c. Section 484c contains two elements: 1) the use of a false voucher to procure funds, *and* 2) use of the funds procured by that voucher for a purpose other than that "for which the claim was submitted." Here the majority holds that "[w]here, as here, the author of the voucher falsely states that a named payee actually has performed or will perform work, Penal Code section 484c is violated." (Maj. opn., *ante*, at pp. 1847-1848.) Apparently, the majority considers redundant or surplusage the rest of the statute, "and does not use the funds for the purpose for which the claim was submitted . . . ."

Appellant did not receive the money from Community Group Funding, Inc. (CGF). Johnson received it and wrote his own check which was deposited to the Darrik-Marten Company account from which appellant subsequently wrote a check to himself for $5,000. The majority states that

had the claim been submitted for the stated purpose of paying for supervision, the result might have been different. In other words, appellant is guilty because he lied and listed the wrong payee even though the funds were obtained for the same purpose, i.e., supervision of the project.

If section 484c means what the majority appears to hold, it would read "any person who submits a false voucher with the intent to deceive the lender is guilty of embezzlement." If this is what the Legislature meant in enacting section 484c, it should say so. It would not be necessary to add the rest of the statute if "dishonest practices" alone were sufficient to constitute a violation. (See, e.g., Bus. & Prof. Code, § 17200 et seq.) " ' "[A] statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application, violates the first essential of due process of law." ' " (*People* ex rel. *Smith* v. *Parkmerced Co.* (1988) 198 Cal.App.3d 683, 691 [244 Cal.Rptr. 22].)

There appear to be no published cases interpreting section 484c, perhaps because no prosecutor has been certain enough of its meaning to charge anyone with its violation. Appellant was not prosecuted for, nor does he stand convicted of, violating an implied covenant of good faith and fair dealing allowing CGF to insist upon accurate information. In fact, Lukens admitted that the loan agreement did not give CGF the right not to deliver the funds if it did not approve that appellant, rather than Johnson or another licensed contractor, supervised the project.

The lack of further definition of what constitutes embezzlement under section 484c was compounded by the error with the embezzlement instructions given. The majority holds that this error is harmless because its effect "was to force the prosecution to carry a heightened burden of proof." (Maj. opn., *ante*, at p. 1846.) Not so. In *People* v. *Counts* (1995) 31 Cal.App.4th 785 [37 Cal.Rptr.2d 425], relied upon by the respondent and the majority, the evidence supported the additional element of corroboration. It is true that in California the various common law theories of theft, including embezzlement, have been consolidated and the jury "may find upon either theory, if there is an 'unlawful[ taking]' . . . ." (*Id.*, at p. 793.) However, whether there was an "unlawful taking" depends, in large part, upon the meaning of section 484c.

Unlike *Counts*, there was neither factual nor legal support in this case for the additional "evidentiary burden" of a position of trust and confidence. Unfortunately, the prosecutor argued that there was a relationship of trust. The majority acknowledges that a position of trust and confidence, as set

forth in the embezzlement instructions, does not legally exist in a commercial setting where there is a "hard money" loan to a commercial developer. (See *Peterson Development Co.* v. *Torrey Pines Bank* (1991) 233 Cal.App.3d 103, 119 [284 Cal.Rptr. 367]; *Mitsui Manufacturers Bank* v. *Superior Court* (1989) 212 Cal.App.3d 726, 729 [260 Cal.Rptr. 793].) The prosecutor also argued that ". . . the state of the law in California is that if you submit a false voucher you are guilty of embezzlement period." In other words, if you lie in a voucher for construction funds, you are guilty of violating section 484c.

If the inadequacy of the instruction is legal, not merely factual, the rule of *People* v. *Green* (1980) 27 Cal.3d 1, 69 [164 Cal.Rptr. 1, 609 P.2d 468], requires reversal, absent a basis in the record to find that the verdict was actually based on a valid ground. (*People* v. *Guiton* (1993) 4 Cal.4th 1116, 1128-1129 [17 Cal.Rptr.2d 365, 847 P.2d 45].) In *People* v. *Harris* (1994) 9 Cal.4th 407, 418-419 [37 Cal.Rptr.2d 200, 886 P.2d 1193], the California Supreme Court limited its earlier holding in *People* v. *Green* to "instructional error, or a 'legally incorrect' theory of the case which, if relied upon by the jury, could not *as a matter of law* validly support a conviction of the charged offense. [Fn. omitted.]" The effect of the erroneous instructions given, the lack of any instructions clarifying embezzlement under section 484c, and the prosecution's argument require reversal. The instruction on embezzlement was legally incorrect, as well as factually insupportable. The use of the erroneous embezzlement instruction and argument could easily have resulted in the jury convicting appellant of simply lying (which he concededly did).

If the court did not find that appellant's proffered special instructions were correct or adequate, it still had a sua sponte duty to correctly instruct on all the elements of a charged offense. (*People* v. *Cummings* (1993) 4 Cal.4th 1233, 1311 [18 Cal.Rptr.2d 796, 850 P.2d 1].) It did not do so. It is impossible to tell which of the prosecutor's three theories served as a basis for the jury's verdict and we should not take the "one out of three ain't bad" approach. Consequently, *People* v. *Green*, even as modified by *People* v. *Harris*, requires reversal.

Appellant's petition for review by the Supreme Court was denied August 14, 1996.