Filed 9/24/25  P. v. Hartsfield CA4/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, | D084114 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. SCD296701) |
| AVONTE AHIKIM HARTSFIELD, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of San Diego County, Kimberlee A. Lagotta, Judge.  Affirmed.

Richard Jay Moller, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Eric A. Swenson and Felicity Senoski, Deputy Attorneys General, for Plaintiff and Respondent.

In October 2021, Avonte Ahikim Hartsfield burned down his own food truck and falsely reported that he was the victim of arson.

Hartsfield set up an online crowdfunding campaign through GoFundMe and solicited donations to rebuild his business, claiming he had been victimized by "a shocking series of hate crimes" and fire. He raised $102,276 from more than 2,000 donors.

In November 2022, the People charged Hartsfield with insurance fraud, arson, and grand theft by false pretenses. After the charges were filed, GoFundMe withdrew its support out of concern that Hartsfield had been lying. GoFundMe paid out more than $26,678 in refunds to donors.

At trial, the People provided no direct evidence or testimony to show that any of the donors relied on Hartsfield's false pretense of being an arson victim when deciding to contribute. The jury found Hartsfield guilty of all counts.

On appeal, Hartsfield contends the People failed to prove donors materially relied on the false representation that he was a victim of arson. He argues the conviction for grand theft by false pretense should not stand.

We conclude a jury could reasonably infer the donors gave money to Hartsfield because they relied on his false claim of being an arson victim. We affirm.

FACTUAL AND PROCEDURAL BACKGROUND

In October 2021, Hartsfield burned down his rented food truck. Then he reported to police that he had found his truck burned, and he did not know how it had happened. He also advised that his food truck and his office in a business building (near where he kept the truck parked) had been vandalized and burglarized over the previous two days. He claimed an intruder had left a noose in the office.

The day after he made his report to police, Hartsfield created a fundraising campaign called "Rebuilding After a Series of Hate Crimes" on

GoFundMe. The "fundraiser story" began: "Hello. I'm raising funds for my business after a shocking series of hate crimes directed at myself and my business." He wrote his food truck was "burglarized and vandalized multiple times." He claimed an unknown perpetrator had cut his power cords, broken into and stolen items from his truck and office, and left a noose hanging from the door in his office. He also claimed his truck burned down completely. He wrote that police were still investigating, but it did not look like there was much hope for holding anyone responsible. He said this was difficult for him as a Black small business owner who did not have access to funding sources "typically available." He asserted he had just signed a lease for a new restaurant location, and the proceeds from the truck were supposed to cover the costs of his expanded business, but now he had no money from the food truck to open the restaurant. The fundraising website included three photos of a badly burned food truck.

KUSI News interviewed Hartsfield about the fire, the possible hate crime, and his GoFundMe. The interview aired the day after his fundraiser launched. He also posted extensively on social media during October to promote his fundraiser.

The campaign raised $81,975 within the first two days, with 1,800 donors, 896 shares, 89 comments, and 2,400 followers. The minimum contribution per donor was $5. The "top donation" at the time consisted of $1,000, and two other donors donated $50 each. The campaign reached its fundraising goal of $100,000 within four days of the initial post. The GoFundMe campaign raised at least $102,276 through more than 2,000 donors.

In March of 2022, Detective John Clayton conducted a follow-up interview of Hartsfield.[1]  Hartsfield eventually said that he had witnessed how the fire occurred.  He said he was inside the truck, the rice cooker was still on, and he saw a spark that lit up the driver seat, then rushed out in a panic.

Days after this follow up interview, Hartsfield updated his GoFundMe page and offered refunds to donors, falsely explaining the food truck fire was determined to be caused by electrical mishap.  Up until June 2022, the fire department viewed the cause of the fire as inconclusive.

In June 2022, Captain Patrick Buckley of the fire department reexamined the burnt food truck and the surveillance footage that placed Hartsfield near the scene at the time of the fire.  He also considered and was able to disprove Hartsfield's new account that the fire started from a sparking rice cooker.  At that point, the captain was able to determine the fire was intentionally set by an open flame such as a lighter that was removed from the scene.

Based on Hartsfield's report of the fire, the owner of the food truck filed an insurance claim.  The insurance company interviewed Hartsfield since he was the user of the truck and would have more information on how the fire may have started.  Hartsfield filed a claim through his own insurance and represented that he was not present when the truck caught fire.

---

[1]    The investigation was ongoing between October 2021, the date of the arson, and March 2022, when Detective Clayton followed up with Hartsfield. The unit was also investigating other matters, hence the delay.

In early November 2022, the People charged Hartsfield with arson (Pen. Code,[2] § 451, subd. (d); count 1); insurance fraud (§ 548, subd. (a); count 2); presenting a false claim to insurance (§ 550, subd. (a)(1); count 3); presenting false information supporting an insurance claim (§ 550, subd. (b)(1); count 4); and grand theft (§ 487, subd.(a); count 5).

At some point during the same month, GoFundMe received a search warrant as part of the ongoing police investigation. In response, it conducted its own internal investigation. GoFundMe became concerned about potential misrepresentation, which is a violation of the terms of service. To honor its "GoFundMe giving guarantee" of protecting donors from misuse of the platform, it sent donors a single e-mail in mid-November. It alerted them it would no longer support Hartsfield's fundraiser and offered refunds. The notification did not provide details as to why GoFundMe was no longer supporting the campaign.

Four hundred seventy-four donors requested a refund. GoFundMe returned $26,678 from its own account because it had already dispersed the money to Hartsfield.

At trial, a representative from GoFundMe testified that the organization itself donated $750 to Hartsfield's campaign. No other donors testified.

Hartsfield was convicted of all charges and sentenced to five years four months in prison.

---

2    All statutory references are to the Penal Code unless otherwise indicated.

DISCUSSION

*Substantial Evidence Supports the Conviction for Grand Theft by False Pretenses*

Hartsfield contends the evidence is insufficient to support grand theft by false pretenses because there was no direct evidence that any of the donors relied on his false representation of being a victim of arson when deciding to contribute to his fundraiser.  He argues that even if the jury could reasonably infer that GoFundMe itself relied on his false pretense, it only donated $750, which does not reach the threshold for grand theft.  We conclude there is substantial evidence to support a reasonable inference that donors transferred funds in reliance on Hartsfield's misrepresentation that he was an arson victim.

We examine the entire record in the light most favorable to the judgment to ascertain whether it contains sufficient evidence of reasonable, credible, and solid value that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt.  We presume every reasonable inference from the evidence to support the judgment.  (*People v. Covarrubias* (2016) 1 Cal.5th 838, 890.)  Substantial evidence includes circumstantial evidence and any reasonable inferences that can be taken from the evidence.  (*People v. Clark* (2011) 52 Cal.4th 856, 943.)  A reasonable inference may not be based on "suspicion," "imagination, speculation, supposition, surmise, conjecture, or guesswork" alone.  (*People v. Rekte* (2015) 232 Cal.App.4th 1237, 1247.)

To prove theft by false pretenses under section 484, the People must show "(1) the defendant made a false pretense or representation to the owner of property; (2) with the intent to defraud the owner of that property; and (3) the owner transferred the property to the defendant in reliance on the

6

representation." (*People v. Wooten* (1996) 44 Cal.App.4th 1834, 1842 (*Wooten*).)  Grand theft requires theft of at least $950.  (§ 487.)

"Reliance" means the misrepresentation "materially influenced" the owner to hand over the property.  The misrepresentation does not need to be the only reason a person transfers property, but there must be a demonstrated causal connection between the false representation and the property transfer.  (*Wooten, supra*, 44 Cal.App.4th at pp. 1842–1843.) Reliance may be inferred from the evidence.  (*People v. Whight* (1995) 36 Cal.App.4th 1143, 1151.)  It is not necessary for the victim to explicitly testify that he or she relied on the false representation.  (*People v. Mason* (1960) 184 Cal.App.2d 317, 367.)

On this record, we conclude it was reasonable for the jury to infer donors gave money in direct response to Hartsfield's seemingly substantiated and highly sympathetic plea for help to recover from arson.  He supported his arson claims with photos of the burnt truck, which provided the public a basis for believing Hartsfield was telling the truth about the fire.  The immediate media attention lent credibility to his campaign, validating his need for the funds and highlighting how people could help.  Hartsfield deliberately stoked public sympathy by claiming to have been the victim of a series of hate crimes, including the arson, and asserting that the perpetrator of the arson had left a noose on his office door.  It was reasonable for the jury to conclude that donors were materially influenced and donated money because of Hartsfield's false pretense.  (See *Wooten, supra*, 44 Cal.App.4th at pp. 1842–1843.)

Hartsfield asserts that perhaps the community came to his assistance because he was already known for helping feed the homeless with his food truck.  Or, he suggests, maybe they were galvanized by the "shocking series

7

of hate crimes" or the burglary of his office, rather than the truck arson, which was the only incident Hartsfield admitted falsifying (and for which he was convicted). But there was no evidence of any series of hate crimes or burglary by a third party, and the jury was entitled to believe that none of this was true. It was perfectly rational for the jury to conclude the GoFundMe donors gave money to Hartsfield for the exact reason he urged them to, that he was the victim of a racially motivated arson of his food truck, which had resulted in a loss of the income he needed to open his restaurant. It defies logic to suggest donors would have given him money exclusively for reasons other than his shocking story of a racially motivated arson with a noose left behind as some kind of message of hate. And even assuming donors might have had other motives, that does not mean the jury could not reasonably infer the donors also relied on the false claim of arson. (See *Wooten, supra*, 44 Cal.App.4th at pp. 1842–1843 [misrepresentation need not be only reason for transfer of property].)

Hartsfield suggests that because about three-fourths of the donors did not request refunds, they must not have believed they had been defrauded. But the jury was not required to draw this inference. There are any number of possible explanations why many donors did not request a refund, including that they still believed Hartsfield had at least been the victim of an electrical malfunction, as he claimed when he offered his own refunds a few months before GoFundMe did. Hartsfield's faux transparency may have led donors to believe he was still deserving of the money. When GoFundMe subsequently offered its refunds, the donors still did not have the benefit of knowing that Hartsfield would later be convicted of arson. And there are other possible explanations as well, such as that donors did not request refunds simply because they felt recovering the small amounts they had donated was not

worth their time. It was for the jury to determine the significance, if any, of the fact that many donors did not request refunds.

We conclude there is substantial evidence to support the reasonable inference that donors gave money to Hartsfield in reliance on his false representations about being a victim of arson and a hate crime. The stated purpose of Hartsfield's GoFundMe fundraiser was to help him recover from arson, which Hartsfield suggested was committed as part of a campaign of hate crimes against him as a Black small business owner. The jury could reasonably infer that donors gave money to Hartsfield out of sympathy to him for being the victim of such a disturbing hate crime, as Hartsfield himself intended when he used this false story to solicit donations on GoFundMe.

## DISPOSITION

The judgment is affirmed.


BUCHANAN, J.

WE CONCUR:



IRION, Acting P. J.



DO, J.

9