Filed 10/19/15  P. v. Simpkins CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

|  |  |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>AARON MARTIN SIMPKINS,<br><br>    Defendant and Appellant. | E061098<br><br>(Super.Ct.No. FVI1302855)<br><br>OPINION |

APPEAL from the Superior Court of San Bernardino County.  John M. Tomberlin, Judge.  Affirmed.

Thea Greenhalgh, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Melissa Mandel, and Laura Baggett, Deputy Attorneys General, for Plaintiff and Respondent.

1

While in jail, defendant and appellant Aaron Martin Simpkins agreed to do a favor for fellow inmate Troy Faruk. Upon his release, defendant would move Faruk's car from the apartment complex where it was parked so that it would not get towed. However, instead of relocating the car, defendant sold it to a friend. A jury convicted defendant of embezzlement (Pen. Code, § 508;[1] count 1), and the court declared a mistrial as to grand theft by false pretense (§ 487, subd. (a); count 2). Defendant admitted five prior convictions, including one strike. Defendant was sentenced to a term of 9 years in state prison.

Defendant raises two arguments on appeal. He contends the court erroneously denied his *Marsden*[2] motion because he was involved in an irreconcilable conflict with his attorney. He also contends the court erred in using CALCRIM No. 1806 as the instruction for the embezzlement charge without also including the language from CALJIC No. 14.07 regarding the element of a relationship of trust. Because we conclude that the issues between defendant and his counsel did not rise to the level of an irreconcilable conflict and that CALCRIM No. 1806 includes trust as a required element of embezzlement, we affirm.

---

[1] All further unspecified statutory references are to the Penal Code.

[2] *People v. Marsden* (1970) 2 Cal.3d 118 (*Marsden*).

2

I

FACTUAL AND PROCEDURAL BACKGROUND

A.  *Trial Evidence*

Defendant and Troy Faruk met when they were both in custody at West Valley Detention Center in Rancho Cucamonga. They formed a friendship through discussing their religious beliefs. Faruk told defendant that his apartment lease was about to terminate and that his car would be towed if it remained parked at the apartment complex. Defendant was going to be released from custody before Faruk and, after a few discussions, agreed to move Faruk's car from the apartment complex to his family's residence on Adelia Street in Hesperia. Faruk arranged for his in-home care provider to deliver the car keys to defendant.

The agreement was never memorialized in writing. Faruk never gave the defendant permission to do anything with his car other than move it to a new location so that it would not get towed. Faruk testified that he asked defendant to help him because he trusted defendant and considered him to be a friend. Faruk offered to pay defendant for moving his car but defendant declined.

After his release defendant contacted Cheryl Craig, a longtime family friend and offered to sell her Faruk's car. He told her that he was selling the car for a man who was in prison for life and that he planned to give the man the proceeds of the sale. Craig asked defendant if he had documentation indicating that he had authority to sell the car.

Defendant showed her lien sale papers that were in his name and Craig believed this to be sufficient. Craig agreed to buy the car for $1,500, which she paid to defendant in several installments.

About a week before Faruk's release date, defendant became anxious about Craig completing the payments and registering the car in her name. Defendant brought Craig a bill of sale stating that he was the seller and Craig was the buyer, and they both signed it.

When Faruk was released, he went to the residence on Adelia Street in Hesperia to retrieve his car but it was not there. The people who lived there had bought the house a year before and did not know defendant. After defendant refused to tell Faruk where the car was Faruk contacted the police.

When Craig attempted to register the car in her name, she was informed that it was stolen. Craig turned over the car and never received the money she paid to defendant to purchase it.

B.    *The Plea Offer, Competency Hearing, and Marsden Motion*

Before trial, defendant's attorney requested a competency hearing because he believed defendant might be delusional.[3] Counsel stated that defendant was not listening to him and was rambling and unable to communicate logically. The court granted the

_____

[3] Section 1368, subdivision (b) requires the court to conduct a hearing to determine a defendant's competence "[i]f counsel informs the court that he or she believes the defendant is or may be mentally incompetent."

request, stating that counsel was an experienced attorney who had never requested a competency hearing in all of the years "that I've dealt with you." After the court's ruling, the following exchange ensued:

"The Defendant: Your Honor, this is crazy. That's just kind of crazy. . . . This guy [is] going to step down because of the simple fact that I want to go to trial is something totally against what I'm—can I pro per myself, then?

"The Court: No. Not at this time.

"The Defendant: That's crazy.

"The Court: Your attorney has declared a doubt.

"The Defendant: You're going to drop me like that?

"[Defense Counsel]: I'm still your lawyer.

"The Defendant: My God. You're going to do me like that? You're going to do me all up here and shit on me?"

Defendant was assessed and found competent to stand trial. The day before trial, defendant requested a substitution of attorney. At the *Marsden* hearing, defendant stated that he and his attorney could not see "eye-to-eye" on anything. He believed that because his attorney had suggested he take the plea offer, his attorney was not vigorously advocating for him. He stated that his attorney had called him "stupid" and a "fool" for not taking the offer. He believed that his attorney had declared a doubt as to his

competence as retaliation for not accepting the offer. Defendant was worried that he was going to be "railroaded" and "dump[ed]" at trial.

Counsel told the court that, at least initially, he thought that he and defendant had a good relationship. He stated, "I like [defendant]. I understand where he's coming from. He's always spoke[n] to me truthfully. And again . . . I know he's upset for the 1368." He believed that the plea offer was the best he could obtain. The prosecution had offered 16 months, plus 32 months for the prior strike, whereas defendant's sentence could be as high as 16 years because of his prior convictions. Counsel admitted he had "become passionate over" defendant's refusal to take the offer because he did not want him to "gamble with his life," given his age and prison exposure. Despite his concerns regarding defendant's potential prison exposure, counsel stated that he was prepared for trial and had a trial strategy in mind.

The court explained to defendant that attorneys have an ethical obligation to request a competency hearing in the face of a doubt about a client's mental competency to stand trial. It also explained to defendant that he did not "have to like [his] attorney" or "like the attorney's strategy."

Defendant responded that he struggled with trust issues as a result of his paranoia and schizophrenia. He acknowledged that a "normal person" would feel comfortable with his lawyer, but his "mindset" did not allow him to feel comfortable. He explained that "as a mental person" he did not feel comfortable with a person if he had "a suspicion

6

or inkling of a doubt" about them. His tendency was to "shell up" and stop communicating effectively or rationally when he felt that someone was against him.

The court reminded defendant that he had an obligation to assist his attorney, stating, "If you decide that you're just going to not work with [your attorney], that's going to be on you." Defendant asked the court to "have [my attorney] . . . come down and sit with me, and then go over all this stuff before so we better prepare ourselves for a trial so that we can get an understanding." The court denied the *Marsden* motion.

II

ANALYSIS

A. *Defendant's Marsden Motion*

Defendant argues that the court's denial of his substitution motion was error. He asserts that he felt "disrespected and ignored" when his counsel recommended he take the plea offer, chided him for not taking the offer, and questioned his competency. Defendant construed his attorney's plea recommendation as a "refusal to believe in [his] innocence" and as an indication that he would not vigorously defend him at trial. According to defendant, all of these suspicions about his attorney "translated into a relationship of irreconcilable differences."

We review a trial court's denial of a *Marsden* motion for abuse of discretion. (*People v. Taylor* (2010) 48 Cal.4th 574, 599 (*Taylor*).) A defendant seeking substitution of appointed counsel is entitled to relief if the record clearly shows that counsel "is not

7

providing adequate representation or that defendant and counsel have become embroiled in such an irreconcilable conflict that ineffective representation is likely to result." (*Ibid*.) The *Marsden* hearing is an informal hearing for the trial court to decide whether the defendant's grievances have "sufficient substance" to warrant counsel's replacement. (*People v. Hines* (1997) 15 Cal.4th 997, 1025.) The trial court determines credibility at the hearing; it may find a defendant's complaint unfounded if it credits counsel's explanations. (*Taylor*, *supra*, at p. 600.)

" '[A] defendant may not force the substitution of counsel by his own conduct that manufactures a conflict.' " (*Taylor*, *supra*, 48 Cal.4th at p. 600.) The court may deny a *Marsden* motion if the alleged deterioration in the attorney-client relationship "was due to defendant's willful, defiant attitude or to a mental problem that was either feigned or real." (*Ibid*.)

Here, the trial court did not abuse its discretion in denying defendant's request for substitution of counsel. The court provided defendant an opportunity to air his concerns and counsel an opportunity to respond. Based on the record of the hearing, the court could reasonably conclude that defendant's suspicions about his attorney's ability to vigorously represent him were a result of defendant's own trust issues, not counsel's behavior.

Defendant was upset by his attorney's recommendation that he accept the plea offer and his attorney's request for a competency hearing. Counsel explained that his

plea recommendation had nothing to do with his beliefs about defendant's guilt. He was prepared to defend his client and had a trial strategy. Counsel's concern was that he did not want defendant to risk going to jail for a much longer period. As for the competency hearing, the court had already determined that counsel's doubt as to defendant's mental state was genuine and was not a tactic to delay trial.

After the court explained to defendant that his attorney had an ethical duty to request the competency hearing and that defendant likewise had a duty to assist his attorney, defendant acknowledged that his concerns were a result of his mental health issues. He admitted that when he felt suspicious or had an "inkling" of a doubt about a person, he found it very hard to communicate with that person or trust them. He recognized that this was unique to him and that most people would not react the way that he had.

"The mere ' "lack of trust in, or inability to get along with," ' counsel is not sufficient grounds for substitution." (*Taylor*, *supra*, 48 Cal.4th at p. 600.) Defendant's concerns were based on his own doubts about his attorney, doubts which defendant recognized were unique to him and were likely not objectively reasonable.

Defendant's reliance on the allegation that his attorney had called him "stupid" and "a fool" for refusing to take the plea offer does not affect our conclusion. Assuming the allegation is true, "heated words alone do not require substitution of counsel." (*Taylor*, *supra*, 48 Cal.4th at p. 600, citing *People v. Smith* (1993) 6 Cal.4th 684, 696.)

9

The relationship between defendant and his attorney had not devolved into one of bitterness, antagonism, or irreconcilable differences. Counsel showed concern for defendant's potential prison exposure and a readiness to defend him at trial. The court's refusal to appoint new counsel was reasonable under these circumstances.

B.    *The Embezzlement Instruction (CALCRIM No. 1806)*

Defendant argues that the standard instruction for embezzlement, CALCRIM No. 1806, was incomplete because it did not properly describe the relationship of trust required for a conviction. He contends that the court should have used CALJIC No. 14.07 instead because it requires that the victim entrust property to the defendant "pursuant to" a "relation of trust and confidence." However, defendant did not request CALJIC No. 14.07 nor did he raise any objections to CALCRIM No. 1806 to the trial court. By failing to object and give the court a chance to address the alleged error before instructing the jury, defendant waived this argument. (*People v. Dunkle* (2005) 36 Cal.4th 861, 895-897, disapproved of on other grounds by *People v. Doolin* (2009) 45 Cal.4th 390, 421, fn. 22.)

In any event, there was no instructional error because CALCRIM No. 1806 is a complete and correct statement of the law on embezzlement and CALJIC No. 14.07 would have been duplicative and unnecessary. (See, e.g., *People v. Fenderson* (2010) 188 Cal.App.4th 625, 636-637 [citing CALCRIM No. 1806 for the elements of embezzlement].) Embezzlement is "the fraudulent appropriation of property by a person

to whom it has been intrusted." (Pen. Code § 503.) As read to the jury, CALCRIM No. 1806 provides that the elements of embezzlement are: "1. An owner or the owner's agent entrusted his property to the defendant; [¶] 2. The owner or owner's agent did so because he or she trusted the defendant; [¶] 3. The defendant fraudulently converted that property for his own benefit; [¶] AND [¶] 4. When the defendant converted the property, he intended to deprive the owner of it or its use." The instruction clarifies that "[a] person acts *fraudulently* when he or she takes undue advantage of another person or causes a loss to that person by *breaching a duty, trust or confidence*." (Second italics added.)

Defendant's preferred instruction, CALJIC No. 14.07, reads: "Every person to whom property has been entrusted who fraudulently appropriates that property to his own use or purpose, is guilty of the crime of theft by embezzlement. [¶] In order to prove this crime, each of the following elements must be proved: [¶] 1. *A relation of trust and confidence existed between two persons*; [¶] 2. Pursuant to that relationship one of those persons accepted property entrusted to him by the other person; and [¶] 3. With the specific intent to deprive the other person of his property, the person appropriated or converted it to his own use or purpose." CALCRIM No. 1806 and CALJIC No. 14.07 use slightly different phrasing, but both require that the defendant gained access to the victim's property by way of a relationship of trust. There is no reason for the court to have given both instructions.

11

Defendant argues that CALCRIM No.1806 is inadequate on the subject of trust because it is essential that the jury know that the relationship of trust is "between two persons" and is "not limited to the owner's trust." Defendant asserts that the prosecution only presented evidence as to Faruk's trust in defendant and that it failed to establish that defendant trusted Faruk. We disagree. There is no requirement that, in order to be guilty of embezzlement, a defendant must trust the victim. Rather, when embezzling another's property, the wrongdoer *knows* that the victim trusts him or her and *takes advantage* of that fact to obtain access to the property. (See, e.g., *People v. Nazary* (2010) 191 Cal.App.4th 727, 742.) The language of CALCRIM No. 1806 clearly conveys this.

Moreover, to the extent that defendant is arguing that the prosecution presented insufficient evidence of a relationship of trust between Faruk and defendant, that is not a legal question of adequacy of the instruction but a factual question for the jury to decide. Based on Faruk's testimony and the testimony of the care provider who gave defendant the car keys, the jury could reasonably find that Faruk trusted defendant and defendant took advantage of that trust.

Finally, defendant argues that embezzlement requires a "fiduciary relationship," which is a technical term requiring a clarifying instruction. He argues further that if the court had defined a fiduciary relationship, it would have been clear to the jury that such a relationship cannot exist "between two jailed inmates." Defendant is incorrect that some type of special or technical fiduciary relationship is required for the entrustment element

12

of embezzlement.  All that is required is a relationship of trust, as that word is commonly understood, as opposed to, e.g., no relationship or a debtor-creditor relationship.  (*People v. Wooten* (1996) 44 Cal.App.4th 1834, 1845-1846; see also *People v. Nazary*, *supra*, 191 Cal.App.4th at p. 742 [the "fiduciary" relationship required for embezzlement is simply a relationship of "trust and confidence"].)  "A court has no sua sponte duty to define terms that are commonly understood by those familiar with the English language."  (*People v. Bland* (2002) 28 Cal.4th 313, 334.)  Whether two inmates actually formed such a relationship is a question of fact.

The instruction on embezzlement was complete.  We find no error.

III

DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

CODRINGTON
J.

We concur:

RAMIREZ
P. J.

MILLER
J.

13